## Hiester *against* Maderia.

At a sheriff's sale of land, the plaintiff and defendant in the execution agreed that the property should be struck down and conveyed to the plaintiff, and that he should reconvey to the defendant upon the payment of the amount due upon the execution within a specified time, and that upon failure to pay within that time, the title should be absolute.  *Held*, that this arrangement created a title in the plaintiff in the nature of a mortgage, and that upon a sale of the land by him after the specified time, the defendant was entitled to recover from him the amount after deducting the amount of his debt due on the execution.

ERROR to the Common Pleas of *Berks* county.

John Miller, administrator of Michael Maderia, deceased, against John S. Hiester.

The facts of this case, and the questions of law raised, are fully stated in the opinion of the court.

*Smith* and *Strong*, for plaintiff in error, argued that time was of the essence of the agreement between the parties, and the plaintiff could only now recover in violation of his own contract. This case differs from all others where the same principle has been contended for, in this, that it is a legal title, made through

[Hiester v. Maderia.]

the medium of judicial sale. It was not competent for the parties to give to that sale any peculiar character but what the law gives it.

*Hoffman, contra,* argued that the sheriff's deed was adopted by the parties as the mode of making a title, which by their agreement was made defeasible by the payment of the money, and it was competent for the party to show by parol that this whole transaction was intended by the parties to be a mortgage for a given time, and, as has been expressly decided, that limitation is never enforced where it works great injustice, as it would do here. 6 *Watts* 126, 407; 2 *Binn.* 43; 9 *Wheat.* 489; 4 *Kent* 136; 2 *Cain. Cas.* 125.

The opinion of the Court was delivered by

Huston, J.—This was an action arising on the following statement of facts:

John S. Hiester and Michael Maderia, about 1813, had agreed to purchase certain lands in partnership. Afterwards, on the 23d of March 1818, they executed a writing or agreement, as follows:

" John S. Hiester having, at the request of Michael Maderia, purchased for himself and Mr Maderia, nine tracts of land on Deep Creek, in Mahonlonga and Norwegian townships, Schuylkill county, from Joseph Reed, for which the said Hiester paid; and of which two-thirds is the property of the said Hiester, and the other third is to be the property of said Maderia, when he shall have paid $2116, the balance of the purchase money, to the said Hiester, which Hiester advanced to Joseph Reed. One-third of the first payment made to Joseph Reed by the said Hiester having been repaid to him by Michael Maderia in land, (yet to be conveyed to said Hiester,) and in cash, as appears by the statement following. After Maderia shall have paid the above balance of $2116, Hiester is to convey to Maderia one-third of said tracts." Then follows a statement in figures, showing the above balance of $2116 due Hiester, with interest from 4th of February 1817—settled and agreed on as the balance due—signed by the parties 23d of March 1818.

To November term 1822, John S. Hiester brought suit against Maderia, and at April term 1823, obtained a judgment. A *fieri facias* issued to January term 1824, and a *testatum fieri facias* to April 1824, to Schuylkill county. Levied on Maderia's interest in the nine tracts, and on the tract part of which Maderia was to convey to Hiester. On this was marked, debt due $1786.66. In the mean time, Maderia had paid through Seitzinger to Hiester $1500. A *venditioni exponas* issued. On the day of sale, Hiester and Maderia met, and Maderia had in cash $900, which he supposed was the whole debt.

[Hiester v. Maderia.]

It soon appeared that the sum marked on the execution was too large; and the parties came to the following agreement:

"It is agreed, by and between Michael Maderia and John S. Hiester this day, that the sheriff of Schuylkill county proceed to sell the right and title, interest and demand, of the said Michael, of, in, and to ten several tracts of land, situate on the waters of Deep Creek, in said Schuylkill county, held in partnership with John S. Hiester, as appears by an article of agreement between said parties, and that the same be stricken off to the said John S. Hiester for the sum of $200. That thereupon the said John S. Hiester shall convey to the said Michael Maderia, under such title as the said John S. Hiester holds the same at this time, an undivided one-third of nine of the tracts of land, as soon as the said Michael Maderia shall have paid to the said John S. Hiester the balance of the original purchase money with interest, according to a statement to be exhibited by the said John S. Hiester of said balance, which said payment of said balance shall be made by said Michael Maderia within the period of three months from the date of these presents; and in case of the failure of said Maderia to pay the said balance within the aforesaid period of three months, the said title so to be made by the said sheriff as aforesaid, to the said ten tracts of land above-mentioned, to the said John S. Hiester and his heirs, to be absolute and complete in the said John S. Hiester and his heirs discharged from all claims of the said Michael Maderia. The said Michael Maderia to receive a credit on that balance in this settlement for the $1500 paid to the said John S. Hiester, by Jacob Seitzinger on account, in behalf of the said Michael Maderia, and a further credit of one-half of the costs accrued upon the suit against the said Michael Maderia by the said John S. Hiester. The said John S. Hiester agrees further, and promises to convey, upon the said Michael Maderia having paid the abovesaid balance within the time abovesaid, the undivided third, or, if they can agree, the divided third of the said nine tracts above-mentioned to the said Michael, or to such person as the said Michael shall direct. This to be a final adjustment and settlement of all matters in variance between the parties, upon the performance of the agreements above-mentioned by the parties respectively by them to be performed. Witness their hands, this 28th of July 1828. The said Michael is also to convey one-third of the tract to the said Hiester, as stated in the original agreement between the parties. Received $900—see the other side—payment made before the sheriff's sale."

This was signed by Hiester and Maderia. On the back of this was a receipt for $900 on the 28th of July. Sheriff returned nine tracts sold for $150; one tract, $50.

John S. Hiester made out a statement of the account, which showed that at the day of sale there was $1281.60 due to him, instead of $1786.60, marked on the execution. By this account

there was due him at the end of three months, (after taking in and giving credit for sundry small items of costs and taxes,) the sum of $322. Mr Hiester also offered a deed from himself and wife to Samuel Maderia, dated 24th of October 1828. This was rejected by the court, because there was no proof that Michael Maderia had directed or agreed that the deed should be made to Samuel Maderia, and no proof that it was tendered or offered to either Michael or Samuel.

Michael Maderia died, and John Miller, his administrator, brought this suit, and offered, and the court admitted sundry deeds and articles of agreement, by which John S. Hiester sold, or agreed to sell six of the nine tracts to different persons, with receipts for payments endorsed on them respectively, and called the several purchasers to prove the actual payments on the sales to an amount such as would make $3599.22; of which the one-third is $1199.74; from which deduct the balance in 1828 by Hiester's statement, ($322), and interest and taxes, $578.96; the sum claimed by plaintiff, $620.78.

I omitted to state, that in one of the above instances, a purchaser was called whose article of agreement was not produced; but who proved that he had paid Mr Hiester $300 on a purchase of one of the tracts, and $60 for rent, before he agreed to purchase. This was objected to and admitted. All that the plaintiff wished was to prove that Hiester had sold and received money, and how much money. This suit was brought not to deny, but to affirm all sales made by J. S. Hiester, and recover the balance for the heirs of Maderia, after the debt to Hiester was satisfied.

I have stated the facts and agreements of the parties in the order as they occurred, in preference to following the order in which they were adduced in evidence. There were bills of exception taken to the admission of the deed of conveyance from J. S. Hiester and wife to Edmund Boyer for one of the nine tracts; and to the admission of the articles of agreement to sell the other four tracts, and the receipts of Hiester for money paid by the purchasers, which were endorsed on said agreements; and to the parol proof, by the several purchasers, of the actual payment of the money mentioned in such receipts. In the argument in this court, the only objection was, that it was admitting parol evidence in contradiction to the written agreement of John S. Hiester, above recited, and the sheriff's deed to John S. Hiester alone, in fee. As almost every case I shall refer to on the subject, of whether writings amount to a sale or a mortgage, arose on parol evidence, and perhaps almost always will arise, and be decided on parol evidence, all those cases will be found to apply to the bills of exceptions as well as to the main question in the cause.

A very distinguished chancellor said, a century past, that there had been a constant contest between equity and the rapacity of

[Hiester v. Maderia.]

those who had attempted to take undue advantage of the poverty of those with whom they had dealings.

In this case, John S. Hiester had in the hands of the sheriff a *venditioni exponas*, calling for a real debt of above $1780, when by his own statement, made shortly after, there was due only $1280. On the day on which the sale was advertised, Maderia came with $900 in cash, expecting, and perhaps insisting, this was the whole amount due. Hiester, however, who had not taken the trouble to calculate the amount due from Maderia, is very anxious to save future trouble, and the agreement above set out is made. The court below thought it not a mortgage. This court say it is a mortgage. It seems to be forgotten that a common mortgage is in form, (and originally was in fact), as absolute a conveyance as can be devised by a scrivener; and the estate and possession, or right of possession, pass the instant it is sealed and delivered; and it is to remain absolute, unless the money secured by it is paid as therein agreed and stipulated; and yet nobody pretends to deny now, that the payment of the money long after the time agreed on, defeats the estate, and no re-conveyance is necessary: none is ever made. It would be disgraceful to the administration of justice, if the change of form of the instrument of writing should make that an absolute conveyance which, in its plain and direct form, the laws of every country say is only a security for a debt. And the decisions have been the same, whether the real nature of the transaction has appeared in the same or in different instruments; nay, where the deed has been absolute, and the real nature of the transaction has been proved by parol, it is only a mortgage. I shall cite only a few cases. *Exton* v. *Greaves*, (1 *Vern*. 138). Several creditors were pressing for the foreclosure of a mortgage. The mortgagor could not pay. Greaves, one of the creditors, proposed to them that he would purchase the equity of redemption, and hold in trust for all the creditors, who were to repay his costs and expenditures in the purchase. They had to file a bill against him: he pleaded that they had not paid him at the time agreed on, and that 20 years had elapsed; but a decree for the creditors, they allowing his necessary expenses, and for lasting improvements. Modern decisions would, perhaps, sustain his plea of 20 years; but in all other respects the decision is still followed. *Howard & Harris*, (1 *Vern*. 191). A deed in fee, redeemable by him, or the heir male of his body; he died without issue; his general heir shall redeem, and covenant by the mortgagor that no other should redeem, was of no avail; and *Willett* v. *Winnell*, (1 *Vern*. 588) and 2 *Vern*. 520, go to establish that no contrivance shall avail to make that which at one time was but a security for money, become at another time an absolute conveyance of the estate. In *Colwell* v. *Woods*, (3 *Watts* 188), the latter refused to lend his money on a mortgage, and an absolute deed was given him—an agreement that he would

[Hiester v. Maderia.]

re-convey, if the money was repaid by a certain day—and Woods was put into possession. Yet this court held it only a mortgage. *Kunkle* v. *Wolfersberger*, (6 *Watts* 130), same decision. "It is too late," says the Chief Justice, "to say that what was intended to be a security for money, may become a conditional sale by the accidental (or designed) forms of the transaction; or that an agreement to make it such, will not at this day be relieved against; or that the jury are not the proper judges of the intention;" and in both these cases, and in *Wharf* v. *Howell*, (5 *Binn.* 499), and *Stoever* v. *Stoever*, (9 *Serg. & Rawle* 484), the facts rested, in part at least, in parol, and were proved to the jury.

Further, the court admitted proof of declarations of John S. Hiester, made at different times since 1828. The cases cited, and the principle, show there was no error in this. Although the Judge below said this was not a mortgage, there was no error in this of which Hiester can complain. Strictly speaking, it is a deed of trust, in which the representatives have the same right as against a mortgagee in possession, whose debt was paid by receipt of rents and profits.

As to the exception to not permitting the defendant to make out a calculation and statement in figures, I will not say it can never be done; but it was properly rejected in this. This suit was to recover money received beyond his debt, from receipt of money from sale of six of the nine tracts. If the representatives of Maderia claim their portion of the tenth tract, held by a different title, and struck off (not sold) to Hiester, it will be proper to consider of conveying or releasing to him the one-third of that tract, or whatever portion he may be entitled to in fee; but as J. S. Hiester had the sheriff's deed for the whole of that tract, it was improper, if not absurd, to charge Maderia for not conveying it.

Judgment affirmed.