# Odenbaugh *versus* Bradford.

1. If a deed absolute on its face be in fact a mortgage, it has a legal effect which cannot be changed except by payment or release.

2. Once a mortgage always a mortgage.

3. The deed being conditional, the mortgagor has the same time to make payment that any other debtor has.

4. Delay in asserting a deed to be a mortgage, has not the same effect as in seeking in equity to enforce performance of an executory contract.

5. Payment does not stand on the footing of performance in equity.

6. The only effect delay has as to a mortgage, is its bearing on the primary question mortgage or no mortgage.

7. The question mortgage or no mortgage properly submitted to the jury, under the evidence in this case.

November 17th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Greene county:* Of October and November Term 1870, No. 115.

This was an action of ejectment for 157 acres of land brought to June Term 1852, by David Bradford against George W. Odenbaugh.

The land in dispute belonged to James Bradford, who by his will dated in 1821, devised it to his widow, Catharine Bradford for life and at her decease to the plaintiff. On the 14th of August 1840, the widow being still alive, the plaintiff and his wife executed a deed in fee to the defendant for the premises, which was recorded the same day. The consideration stated in the deed was $600 " in hand paid" by the defendant to the plaintiff. No money however appeared to have been paid, but the following obligation had been given by the defendant to the plaintiff :—

[Odenbaugh v. Bradford.]

"David Bradford having this day executed to me a deed for a tract of land, now I do hereby bind and obligate myself in consideration thereof, to pay to the said David Bradford the sum of Six Hundred Dollars, Four Hundred Dollars to be paid in hand; and One Hundred Dollars on the first of April 1842, and the remaining One Hundred Dollars the first of April 1843. The liens that are now on the Docket against the said David Bradford are to be deducted out of the first payment. Witness my hand and seal the fifteenth day of August 1840.

　　　　　　　"G. W. ODENBAUGH.　　[SEAL.]"

Within a few months after the conveyance a number of liens, amounting to about $400 or more, against the plaintiff, were assigned to the defendant. The widow of James Bradford died in 1841, aged about 62 years. The plaintiff claimed to recover the land, on the ground that the deed of conveyance was a mortgage, and that the defendant had been repaid all he had advanced with interest from the profits of the land.

The cause was tried June 21st 1870, before Gilmore, P. J.

The plaintiff testified that in 1840, the defendant, who was his half brother, came to him where he was mowing, and in the presence of C. Odenbaugh, Jacob Clifford, and others, said to him:—

"Dave, I see you have got into trouble; I see your place is advertised for sale." I said "Yes, I saw that myself." Says he, "I come to see you if I could not make some arrangement to save the property for you." Says I, "What way will you do it?" He said, "I was thinking if you would make me a deed for the place, I would pay off the judgments against the place. I don't want strangers to get hold of it, if they do you will never get it back; and whenever you pay me back my money and interest, you shall have the land back again." Christian Odenbaugh spoke up and said, "Now George, if Dave makes you a deed, you will not take any advantage of him, will you?" "No," says he, "I won't. God forbid that I should." This was all that was said that day. Before he started home, he said, "You can study till to-morrow, and I will be back." He came back the next day into the meadow. He came over the same language the next day as near as I can recollect. Just as we were going to supper, he said, "Come over to town to-morrow, and bring your wife with you to give me a deed for the security of this money." Then Christian Odenbaugh spoke up and said, "Now George, if Dave does come over, you will not take any advantage of him?" "No," says George, "I will not." The next day I came to town and brought my wife. We went to Mr. Cleavenger's office and got him to write the deed. After the deed was written, "Now," says Odenbaugh, "we will go down to Esq. Hook's." When we got down there, talked a little, but Odenbaugh called my wife

17 P. F. SMITH—7

out into the entry—I did not hear the conversation between my wife and him. They were not gone long, and then the deed was executed and delivered."

Jacob Clifford testified that he heard George Odenbaugh say, "If I get my money from David Bradford he can have his place back again. I want to make myself safe. I must have a deed or bond from Bradford. I was mowing in Bradford's meadow."

Mary Bradford, wife of plaintiff, testified: "When I come to Esq. Hook's I refused to sign and acknowledge the deed. George took me by myself into the entry. He told me I need not be afraid to sign it—it was only to keep strangers from getting it. And he said as quick as Dave paid him the money back again with interest, he was to have the land back again. I then signed and acknowledged the deed."

Christian Odenbaugh testified: "I was in the meadow when George came there. I believe he was there two days in succession. I have forgotten most of the conversation that took place. When George was about leaving he and Dave were talking about a deed. I said, "George, if Dave makes you a deed, you will not take any advantage of him?" He said, "No." George said he came there to save the property being sold by the sheriff.

James Porter testified that he asked Odenbaugh if he thought he had a good title to the property; he said "he thought he had under the present circumstances, since Bradford was a very worthless man, and he thought he could not raise the money to pay him back."

M. Barnes testified that he heard defendant say that he was "to release the land on condition Bradford would pay back the money, but that Bradford was so worthless he thought he would never do it."

Other witnesses testified to similar declarations by the defendant.

The plaintiff further gave evidence that there were about 100 acres of cultivable land in the tract. Witnesses testified variously that at the time of the conveyance, the land was worth $15, $16 and $20 per acre, subject to the widow's life estate; and that it would rent for $75 to $100 and $1 to $1.50 per acre per annum besides taxes and repairs.

There was evidence also that the plaintiff with the aid of a friend procured $600 and tendered it to the defendant before bringing this suit; he had the money but a short time.

The defendant testified in direct contradiction of the plaintiff and his wife, C. Odenbaugh and Clifford; he denied that he had ever stated to any one that he took the land as security for his money. He said he did not enter satisfaction on the liens against the plaintiff which had been assigned to him, until after he got possession, because his attorneys so advised him.

He gave in evidence the record of an ejectment brought by him

against the plaintiff for this land to September Term 1841, and his recovery on the 21st of September 1842 by verdict. He gave evidence of payments to and for the plaintiff considerably beyond the consideration stated in the deed; also that the consideration was as much as the land was worth at the time. He testified it was worth $4 or $5 per acre, one of his witnesses testified that it was worth $10 or $11 per acre; also that the land was in a very bad condition at the date of the conveyance. The plaintiff in rebuttal gave evidence by E. M. Sayers, Esq., who was his attorney in the trial of the ejectment by Odenbaugh, that the plaintiff (Bradford) then claimed that the deed was a mortgage, and that the defendant (Odenbaugh) recovered under the charge of the court, because Bradford had not tendered the money.

R. W. Downey, Esq., who was present at that trial, testified substantially in the same manner; and also that the question whether the deed was a mortgage or not, had not been submitted to the jury.

The following were points of the plaintiff and the answers:—

4. "The testimony of Bradford as to the existence and terms of the arrangement between him and Odenbaugh is strongly corroborated by the testimony of his wife, if believed, as to what occurred between her and Odenbaugh at the execution of the deed; it is also corroborated by the testimony, if believed, of William Kent, Elizabeth Kent, James Porter, John Porter, Jesse Hook, Mordecai Barnes, Jacob Clifford and Christian Odenbaugh."

Answer: "If the wife of the plaintiff and the witnesses referred to, are believed, it certainly corroborates the plaintiff, and may be convincing evidence that the deed was a mere mortgage."

6. "If Odenbaugh has been repaid the money advanced for Bradford with interest, from the rents, issues and profits of the land, his rights under the deed have ceased, if said deed was a mortgage as contended by the plaintiff."

Answer: "If the defendant has been compensated by the legitimate profits of the land, for the money advanced, his rights under the deed have ceased, and the deed as a mortgage, may be considered as extinguished."

7. "It being admitted that at the trial of the case of Odenbaugh v. Bradford, at September Term 1842, the question whether the deed in controversy was a mortgage, was not submitted to or passed upon by the jury, but their finding under the charge of the court, was on the ground that Bradford had not paid or produced the money in court, the judgment in that case is not even persuasive evidence in this case."

Answer: "It was admitted that the ejectment between these parties tried in 1842, forms no bar to this action. We can only say that the result of the verdict and judgment under the proof,

[Odenbaugh v. Bradford.]

can have but small bearing upon this case. But we will not say that it has no bearing."

The defendant's 4th point and the answer were:—

"The testimony of the plaintiff being flatly contradicted by the defendant in all its parts, and the statement of his wife being at variance with the deed, and insufficient, the plaintiff's case must depend entirely upon other proof; and this consisting of loose declarations made to third parties, before or after the execution of the deed, is insufficient to move a chancellor to decree the deed defeasible, and therefore the plaintiff cannot recover, and the verdict of the jury must be for the defendant."

Answer: "Here we are virtually requested to withdraw this case from your jurisdiction, but we refuse to do so, and leave to you to say, whether on the whole of the evidence in the case, you are clearly and fully convinced that the deed was a mortgage. And we further instruct you that if you so find and believe the defendant (the mortgagee being in possession) has received from the profits sufficient to reimburse him for the money secured by the mortgage, the plaintiff will be entitled to recover. If you do not find that the deed was a mortgage, or if you do not find that the defendant has been reimbursed from the profits of the place, your verdict will be for the defendant."

The verdict was for the plaintiff.

The defendant took a writ of error, and assigned for error the answers to the points, as given above.

*C. A. Black* (with whom were *Phelan & Downey*, for plaintiff in error.—The court was to decide whether the defendant's primâ facie absolute deed was a mortgage: De France v. De France, 10 Casey 385. The judge's conscience as a chancellor's must be satisfied that the facts show that the deed is not absolute as it purports to be: Haslett v. Haslett, 6 Watts 464; Brawdy v. Brawdy, 7 Barr 167; Moore v. Small, 7 Harris 468. The proof to change the apparent character of the deed must be clear, express, direct, positive and unambiguous: Bash v. Bash, 9 Barr 260; 3 Am. Lead. Cas. in Eq. 626; Cook v. Gudger, 3 Jones's Eq. 182. An equity of redemption must be shown: Storch v. Car, 4 Casey 135; and this must be established by facts and circumstances: Streator v. Jones, 3 Hawks 223; McDonald v. McLeod, 1 Iredell's Eq. 123; Franklin v. Roberts, 2 Id. 260. The claim must be an antecedent debt or contemporaneous loan, and must survive the instrument: Todd v. Campbell, 8 Casey 253.

*E. M. Sayers*, for defendant in error, cited Rhines v. Baird, 5 Wright 263; Brown v. Wright, 4 Yerger (Tenn.) 57; Random v. Swartz, 1 Yeates 579; Addison on Contracts 302; Russell v. Southard, 12 How. 139.

[Odenbaugh v. Bradford.]

The opinion of the court was delivered, January 3d 1871, by

AGNEW, J.—Upon a thorough examination of this case, a single question is presented, Whether on all the evidence the court was justified in submitting the facts to the jury? Without laying down any rule, it may be conceded, for the purpose of the argument, that a deed absolute on its face cannot be converted into a mortgage, except upon clear and satisfactory evidence of its character as a security for the repayment of money; that the plaintiff in an ejectment to recover against the deed by converting it into a mortgage stands in the position of plaintiff in a bill in equity to redeem; and that the testimony of himself and the defendant have the same effect as the averments contained in the bill and answer: and, finally, that it is the duty of the judge, as it is that of a chancellor, to determine the sufficiency of the evidence, and, if it be insufficient, to refuse to submit the case to the jury. Carrying these views into the examination, we have not been able to say that the court erred in submitting the evidence to the jury to find the fact whether the deed was absolute or conditional. It is a conceded fact, to begin with, that in the year 1840 David Bradford, the plaintiff, was largely in debt; that his property was advertised at sheriff's sale, and that he had been unable to raise means to pay the executions pressing him. According to Bradford's testimony, George W. Odenbaugh, his half-brother, came to the meadow where he was mowing, and proposed an arrangement to relieve him. He recounts minutely the circumstances, giving time, place, the persons present, the reasons given by Odenbaugh and the proposition, which was, that if Bradford would make him a deed for the place he would pay off the judgments, and whenever Bradford paid him back the money and interest he should have the land back. Two of the persons present were Christian Odenbaugh, a brother of George, and Jacob Clifford. Bradford states that Christian said to his brother, "Now, George, if Dave makes you a deed you will not take any advantage of him, will you?" "No," said George, "I won't. God forbid that I should." David Bradford then details the facts as to going with his wife to town the next day and making the deed to Odenbaugh. On the other hand, Odenbaugh denies the statement of Bradford in decided terms. He says Betsy Kent (his sister) first spoke to him of relieving Bradford, and he suggested that the Bradfords should do it. She returned and told him Bradford had failed to get the money. Bradford, he says, came the next day, and this was the first time he saw him on the subject. He then states the bargain for the purchase of the land at $600; his consulting Mr. Cleavinger, a lawyer; Bradford's coming over the following day, and the finishing of the business. Among other things, he stated that he had no private conversation with Mrs. Bradford; that she was examined apart by the magis-

[Odenbaugh *v.* Bradford.]

trate; that he never said to any one that the deed was only a security for money—never said so in his life, and he gives as a reason for not entering satisfaction on the judgments paid by him, that he was advised not to do so until he got the possession. Admitting, now, that the denial of Odenbaugh of the leading and material facts testified by Bradford sends us to an examination of the other evidence, how does the case stand? And first we may notice the contradiction of Odenbaugh's statement by other witnesses. He is positively contradicted by Christian Odenbaugh and Jacob Clifford as to the first meeting with Bradford in relation to the offer of relief. He asserts Bradford came first to see him the day before the conveyance. They corroborate Bradford that Odenbaugh came to the meadow, and had there a conversation about the place and the deed. Christian Odenbaugh repeats in substance his own expression stated by Bradford, to wit, "George, if Dave makes you a deed, you will not take any advantage of him?" and George's reply, "No." Odenbaugh is also contradicted by Mrs. Bradford as to their private interview in the entry, and her separate examination by the justice. He is contradicted in regard to the deed. He says he never said to any one that the deed was only a security. Mordecai Barnes, James Porter and Jesse Hook, distinctly say he did; and in effect the testimony of William Kent and Betsy Kent is the same thing. The reliability of Odenbaugh's statement is therefore materially weakened by these contradictions. On the other hand, David Bradford's testimony is corroborated in all its material facts. He is first directly corroborated as to the meeting in the meadow, and the conditional character of the deed to be made, by Christian Odenbaugh and Jacob Clifford, who were present. He is directly corroborated again by his wife as to the nature of the conveyance at the time it was executed and acknowledged. She refused to sign the deed. George took her out into the entry and explained it; said it was only to keep strangers from getting the land; as quick as Dave paid him the money with interest he was to have the land back.

Bradford is further corroborated by Odenbaugh's subsequent admissions to others on the very point of the case. Mordecai Barnes heard him say, in 1842 or 1843, that he was to release the land on condition that Bradford would pay back the money; but that Bradford was so worthless he thought he never would do it. James Porter testified that some time after Odenbaugh bought the place, he asked him if he thought he had a good title to the property; and he replied that he thought he had, under the circumstances, since Bradford was a very worthless man, and he thought he could not raise the money to pay him back. He said if Bradford raised the money he should have to give up the land. Jesse Hook says, that about thirty years ago George Odenbaugh

told him he had got the farm for a certain sum of money, and Bradford was to have it back when he could return him or pay him back the money. This testimony is again strengthened by the testimony of John Porter, William Kent and Betsy Kent; for though these witnesses do not testify on the very point as do the others, the effect of their testimony is the same.

There are facts and circumstances which tend to support the case of the plaintiff. When Odenbaugh paid off the judgments against Bradford, instead of having them satisfied at once as encumbrances against the land purchased, he took assignments and never entered satisfaction thereon until after the result of the ejectment against Bradford in 1842. His explanation is, that he had legal advice not to satisfy them until he got the possession. But if he had an absolute deed, what better off did the assignment of the judgments make him? They could not give possession, and only clouded his title. But if his deed was a mortgage only, the ownership of the judgments would enable him to enforce payment, and collect his money. Nor did he need the assignments to show payment on his bond, for by the very terms of his bond he was to have credit on it for payment of the judgments.

The ground on which Bradford failed in the ejectment of 1841, as testified to by two intelligent gentlemen present, and one participating in the trial, is also corroborative. In that ejectment Odenbaugh, who was plaintiff then, claimed under the deed, and Bradford set up by way of defence that it was a mortgage; but not having tendered the money, the court held that this alone would not prevent a recovery, and the question of mortgage or not was not passed upon by the jury. Now, this is entirely consistent with the claim of a mortgage by the defendant; and the fact that he then set it up within two years after the date of the deed is evidence that the defence is no recent discovery, while the litigation is a good reason for fixing the character of the transaction in the minds of those who now testify in the cause.

The next fact is the value of the land. According to the testimony on part of the plaintiff, this land was worth in 1840 at the rate of $15 an acre, subject to his mother's life estate, and its annual rental was worth from $1 to $1.50 per acre. This would make the property, then, worth $2355. On the part of the defendant two of the witnesses testify that the land was worth $10 an acre, which would give the sum of $1570. The others testify that the sum paid by Odenbaugh was a fair price. But if fair, the 157 acres at $600 for the whole, would give but $3.82 an acre, exhibiting a great discrepancy in the testimony of the defence. If, again, we take the age of Mrs. Bradford the mother of David when the deed was made as about sixty-one years, her expectancy of life thereafter would, according to the tables, be about ten years. Then the purchase-money, $600, and its inte-

[Odenbaugh *v.* Bradford.]

rest for ten years, $360, at six per cent., would be but $960.   It
is very evident, therefore, that Odenbaugh got the land for less
than half ·its value, and this is a circumstance favoring the fact
of a mortgage.

Upon the whole case the evidence that the deed was a mortgage
was so strong it would have been error to take it from the jury.
The only countervailing facts are the delay of the plaintiff and
the improvements of the defendant, and these have less force than
at first they seem to have.

It is to be noticed that the defendant made no point at the trial
upon either fact.   As to the delay, the suit being brought in
1852, and standing on the record ever since as a notice and warn-·
ing to the defendant of the continued claim of the plaintiff, it may
well be accounted for in the very character the defendant gave of
Bradford, as a worthless man and unable to raise the money to
repay him.   Even the money once tendered was raised out of
bank for a few days and returned forthwith.   Doubtless it was
well known that it would not be accepted by defendant.   Then as
to the legal effect of the delay, it differs from an executory con-
tract of purchase, which requires the vendee to be ever prompt,
eager and ready to perform, in order to obtain the aid of a chan-
cellor to enforce specific performance.   If a mortgage, it stamps
the deed with a legal effect that cannot be changed except by
payment or release.   Once a mortgage always a mortgage is the
maxim of the law, and payment does not stand on the footing of
performance in equity.   The character of the deed being fixed by
the evidence as conditional, the mortgagor has the same time to
make payment that any other debtor has.   The only effect that
delay can have in such a case is in its bearing on the primary
question.of mortgage or no mortgage; and even on that question
its effect is weak in this case, for we find the plaintiff setting up
the mortgage in the ejectment of 1841, tried in 1842, and after-
wards in bringing this ejectment in 1852.   Besides, the poverty
of Bradford was a reason for delay in order to let the profits of
the land repay the debt, Odenbaugh being in the possession
by his recovery in 1842 in Pennsylvania, the mortgagee being
entitled to recover in ejectment as one of his remedies for collect-
ing his money.  If we add to the debt the claim for improvements,
which Bradford's sense of justice might induce him to suffer to
be refunded, the whole delay would not stretch far beyond the
period necessary to refund all to Odenbaugh out of the profits of
the land.   In regard to the improvements the defendant asked no
instruction of the court.   But if we take the rental as proved he
had nothing to demand.  This rental was proved at one dollar and
a half per acre above the taxes and repairs—a few witnesses said
one dollar an acre.   Taking the medium, the cleared land alone,
100 acres, at $1.25 an acre, would give the annual sum of $125.

[Odenbaugh *v.* Bradford.]

The possession of the defendant of twenty-seven years and over would give a total of $3375, a sum amply sufficient to pay for both debt and interest and the improvements. We cannot see, therefore, that any injustice has been done to the defendant. Upon a careful consideration of the whole evidence we are unable to say that the court erred in submitting the case to the jury, and
The judgment is therefore affirmed.