# Huoncker et al. *versus* Merkey.

1. A deed absolute on its face (dated prior to 1881) may be shown by parol evidence to have been intended as a mortgage.

2. In an action of ejectment, the defendant testified to facts showing that an absolute deed under which the plaintiff claimed, dated in 1872, was intended to be a mortgage. The plaintiff denied the alleged facts. The defendant claimed under a sheriff's sale of the equitable title, under a judgment recovered against the owner thereof prior to the recording of said deed. The court submitted the case to the jury with instructions that the facts testified to by the defendant, if proved clearly to the satisfaction of the jury, were sufficient to establish his title: *Held*, not to be error.

March 2d 1883. Before Mercur, C. J., Gordon, Paxson Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas of *Berks county :* Of January Term 1883, No. 17.

Ejectment, by Jacob Merkey against Emanuel Huoncker, for a tract of land in Berks county containing 18 acres. Christian Huoncker, Michael Schmeltzer and Franklin Synder were admitted as parties defendant, as landlords, the original defendant being tenant in possession. Plea, not guilty.

On the trial, before Sassaman, J., title was admitted in Daniel R. Kline prior to September, 1871. The plaintiff put in evidence a deed from Daniel R. Kline to himself, in fee simple, for the premises in dispute, dated April 6th 1872, recorded September 5th 1878, and rested.

The defendants alleged that said deed to plaintiff, though absolute on its face, was in fact and in law a mortgage ; that the equitable title to the property was in Emanuel Huoncker, and that the defendants had purchased Huoncker's said title under a judgment entered against him after the date of said deed and prior to its being recorded, whereby the plaintiff's unrecorded mortgage was discharged as a lien on the land.

In support of this claim, the evidence on behalf of the defendants was to the following effect :

In 1871 Emanuel Huoncker desired to buy the tract from Daniel R. Kline. Learning that Jacob Merkey held a judgment against Kline for $1,200, Huoncker asked Merkey if he would let it stand if he bought the land. Huoncker testified that Merkey assented.

By articles of agreement dated September 12th 1871, Kline agreed to sell the tract to Huoncker, for $1,200, deed to be made April 1st 1872.

About a week before the 1st of April 1872, Kline moved off the premises and Hounker went into possession. He testified that he paid Kline $1,000 in cash on the agreement, but he could not fix the date ; that on the 1st of April he met

Merkey at the office of Justice Rollman, whom Kline had appointed to represent him; that he, Huoncker, offered to have the deed made in any way Merkey desired so as to secure the $1,200 due him; whereupon it was arranged that the deed from Kline should be made to Merkey, and Huoncker being in possession should pay Merkey the interest on $1,200, yearly; that in pursuance of this arrangement Justice Rollman drew up an agreement, executed the same day (and put in evidence) whereby Merkey agreed to sell said tract to Huoncker for the sum of $1,200, and on receipt thereof on or before April 1st 1876, to execute a deed for the same with a covenant of general warranty and against incumbrances. That in further pursuance of said arrangement a deed was drawn from Kline to Merkey which Kline and wife executed on the 6th day of April, 1872, being the deed offered in evidence by the plaintiff.

Huoncker failed to pay the $1,200, on April 1st 1876, and on April 1st 1878, and again on November 27th of the same year, agreements were signed between Merkey and Huoncker, in the nature of farming leases, in which it appeared that Huoncker was the tenant of Merkey.

Prior to these last mentioned agreements, however, on July 21st 1875, one Rich obtained a judgment against Emanuel Huoncker, for $191.28. This judgment was duly revived June 26th 1880, and an execution issued thereon under which the tract in question was levied on and condemned as the property of Emanuel Huoncker, and sold at sheriff's sale, August 7th 1880, to the defendants, Michael Schmeltzer, Christian Huoncker, and Franklin Snyder, for $900, and a sheriff's deed was acknowledged to them therefor August 30th 1880.

The plaintiff, Merkey, in rebuttal, contradicted Emanuel Huoncker's testimony, and said that when the latter, in 1871, asked him to loan him the $1,200, or let it stand against the land, he refused; but he offered, to buy the property himself from Kline, and rent it to Huoncker, and afterwards sell it to him for what it cost him; that Huoncker agreed to this, and Merkey told him to go and make the arrangement with Kline, on his behalf, if Kline would sell for what he was willing to give, viz., the $1,200 Kline owed him; that Huoncker made a bargain with Kline for Merkey, and afterwards Merkey met Kline and it was all right. Then on April 1st 1872, the deed was drawn from Kline to Merkey and Merkey signed the agreement of that date to sell to Huoncker, but Huoncker failed to comply with it, and afterwards rented the land from Merkey under the leases in April and November 1878, thereby acknowledging Merkey as owner and landlord.

The testimony of the respective parties being thus conflicting, the court submitted the case to the jury with instructions,

[Huoncker *v.* Merkey.]

in substance, that if they believed the plaintiff's story he was entitled to a verdict; but that if they disbelieved the plaintiff and believed the defendant, the facts testified to by him, if proved clearly and satisfactorily to the jury, were sufficient to show that the deed to Merkey, though absolute on its face, was intended by Merkey and Huoncker as a mere security in connection with the agreement of April 1st 1872, to secure to Merkey the $1,200, and vest the beneficial title in Huoncker, subject to the debt, and if the jury so found, then the deed, being at its inception virtually a mortgage, remained such, and being unrecorded, the sale under the judgment against Emanuel Huoncker would divest the plaintiff's lien.

The defendants requested the court to direct a verdict in their favor under all the evidence. Refused.

Verdict, for the plaintiff for the land, to be released upon the defendant's paying the plaintiff the sum of $2,000 within thirty days. Judgment on the verdict. The defendants took this writ of error, assigning for error, inter alia, the refusal of the court to direct a verdict in their favor.

*A. H. Green* (*H. D. Green* with him), for the plaintiff in error.

*Cyrus G. Derr* (*Henry C. G. Reber* with him), for the defendant in error.

Mr. Justice CLARK delivered the opinion of the court, October 1st 1883.

In the trial of this ejectment, in the court below, the specific question was, whether the deed dated April 6th 1872, from Daniel R. Kline to Jacob Merkey, was a conveyance of the land or merely a mortgage upon it. On its face it purported to be an absolute conveyance of the lands in dispute, to Merkey, and therefore the exhibition of it in evidence made a prima facie case for the plaintiff.

In reply to this the defendants produced and offered the agreement in writing, between Kline and Emanuel Huoncker, dated 12th September 1871, showing a previous sale of the same property by Kline to Huoncker, for a consideration of $2,200. Of this sum $1,000 was paid, prior to the execution of the deed, by Kline to Merkey. If the case had ended here, Huoncker, being in possession of the premises under his contract, the deed by Kline to Merkey would, of course, be an absolute conveyance of the title, subject to the equity of Huoncker, of which Merkey thus had actual notice. The defendant, however, then offered in evidence the agreement in writing between Merkey and Emanuel Huoncker, dated April 1st 1872,

by the terms of which, Merkey agreed to sell and convey the same lands to Huoncker for a consideration of $1,200, with covenants of general warranty of title, &c., they then called as a witness Emanuel Huoncker himself, and elicited from him proof of such facts and circumstances, attending the transaction, and such acts and declarations of the parties, as tended to show that the deed from Kline to Merkey, and the agreement between Merkey and Huoncker, taken together, were, in fact, intended simply as a security for money loaned : that the agreement although not in the form, was in the nature of a defeasance to the deed, and that both were to be treated as one instrument, and as a mortgage.    This allegation was rebutted on the part of the plaintiff, by testimony in direct conflict with that of the defendants, the whole question at issue before the jury involving the veracity of the several witnesses, on both sides.

Parol evidence is admissible to explain the real intention and purpose of the parties at the time, though the conveyance is, in form, absolute, and even the defeasance itself may be by parol : Hiester *v.* Maderia, 3 W. & S. 388 ; Morris *v.* Nixon, 1 Howard 118 ; Strong *v.* Stewart, 4 Johns. Ch. 167 : Hamet *v.* Dundass, 4 Barr 178 ; Todd *v.* Campbell, 8 Casey 250.

It is true, a formal mortgage cannot be shown to be a conditional sale, by the same means, except upon clear proof of fraud or mistake, as in such a case it would directly contradict the deed : but proof, that a formal deed was intended as a security for money, raises an equity entirely consistent with the deed, but superior to it.    When the paper alleged to be a defeasance, as in this case, does not purport to be one, is not in that form, is not referred to as such in the deed, is separate from the deed, bears a different date, and is between different parties, the whole question is necessarily one of fact to be determined by the court and jury as questions of fact in equity are determinable.

The burden of proof was upon the defendants at the trial, to convert an absolute deed into a mortgage by parol proof. The evidence in such a case must be clear, explicit and unequivocal ; it must establish an agreement substantially contemporaneous with the execution and delivery of the deed, and not rest on the subsequent admissions of the mortgagee only.    The contract may be expressed or it may be inferred from circumstances.

The law does not regard the    intention, however, further than to inquire if the conveyance was meant as a security for the payment of money.    That original intent being established the conveyance becomes a mortgage, and the parties cannot by special agreement alter the rules of law governing such contracts.    The question, then, was not so much whether the con-

6 OUTERBRIDGE.—30

veyance was specifically intended as a mortgage, but whether it was intended as a security for money; if the latter fact be found, the law infers the former: Bispham's Equity 154.

Upon this specific question of fact the jury was instructed with clearness and accuracy. In the general charge the question is thus presented—

" The deed, on its face, and the agreement, on its face, is each absolute; but if they were concomitant and intended as security for the loan of money, undoubtedly, in legal effect, it was a mortgage. And here it is proper to say that to prove a deed to be a mortgage the proof must be conclusive and satisfactory to the jury. Surely such a deed may be a mortgage. The defeasance may be in writing, and if drawn in apt words is easily proven, but such defeasance may not have been reduced to writing, and then it is susceptible of parol proof, or it may be partly in writing and not wholly, and the part not written may be supplemented by parol evidence.

"The rule of law is further, that if a deed was once intended for the security of a loan or advancement of money, that such deed being defeasible on payment of the amount secured always remains a mortgage."

It is urged, however, that upon the whole testimony the cause should not have been submitted to the jury, that the court should have assumed the responsibility and determined the question. It is true, that an equitable ejectment is merely a substitute for a bill in equity, and the judge, at the trial of it, sits as a chancellor. The whole case, as presented, must therefore, be such as to satisfy the conscience of a chancellor, that the equity is clearly, not doubtfully, established by the evidence of the witnesses, if believed: Ballentine *v.* White, 27 P. F. S. 27. It will be observed, however, that as in this case the equity is asserted by the defendants below, the burden of proof is upon them, that the proof must be clear explicit and unequivocal; that the evidence adduced in support of it, is principally the testimony of Emanuel Huoncker, one of the defendants, and, that the equity thus asserted is specifically denied by the plaintiff below, in his testimony at the trial. Upon what rule of equity practice, therefore, was it the duty of the chancellor to control the finding? The mere submission of the question to the jury, was an adjudication that the proof was sufficient to support the equity alleged, if believed; but certainly the credibility of the witnesses and the questions of fact upon conflicting evidence was for the jury: Ballentine *v.* White, supra.

Each case must, of course, to a great extent, depend upon the circumstances peculiar to itself, but there are certain indicia of intention which frequently occur, and which when they do exist are always looked to; among these are the sufficiency or

[Landis's Appeal.]

insufficiency of the price paid ; whether or not existing securities or evidences of indebtedness were given up or cancelled ; whether there was any obligation to repay the purchase money and whether the grantee entered into immediate possession of the premises : Bispham's Equity 154 ; Colwell *v.* Woods, 3 Watts 197 ; Conway's Executors *v.* Alexander, 7 Cranch 218 ; Rhines *v.* Baird, 5 Wright 264 ; Russell's Appeal, 3 Harris 322 ; Wilson *v.* Shoenberger, 7 Cas. 299. These indicia afford proof, more or less convincing, as to the intention of the parties.

The estate conveyed by Kline to Merkey was undoubtedly only the legal estate ; that was all Kline had, he could convey no more ; the same estate was necessarily therefore sold by Merkey to Huoncker under the agreement of 1st April 1872 ; that legal estate was worth $1,200 only ; the agreement provides for the payment of that sum. It is equally clear that the conveyance by Kline to Merkey was in full satisfaction and discharge of the judgment of Merkey *v.* Kline, indeed the reception of the title was a merger of the debt ; there was an obligation to pay the purchase money, and the possession was in exact conformity with the writings assuming that the conveyance was absolute.

A party, who has been examined in chief as a witness in his own behalf, may be cross examined as to any matters which go to affect his credibility. Questions proper and relevant to show the capacity, intelligence or bias of the witness are admissible and the extent to which such an examination may proceed is a matter in the discretion of the judge. A party, however, can in no case, except where the witness is contumacious, cross-examine or direct leading questions to his own witness.

Upon examination of the whole case we find no error, and therefore the judgment is affirmed.