## Smyser's Estate

*Robert E. Laird,* for Commonwealth.
*Allen C. Wiest,* for appellants.

GROSS, P. J., August 2, 1944.—This is an appeal from the transfer inheritance tax appraisement in the estate of Karvan A. Smyser, late of the City of York, Pa., deceased, filed by Wilbur H. Smyser and Roman J. Smyser as executors and residuary beneficiaries under the will of decedent.

At the hearing on the appeal, instead of producing the oral testimony of witnesses, a stipulation of facts was filed and it was agreed that the same shall be considered by the court as though witnesses had been called by appellants who would have testified to said facts under objection of the Commonwealth to the competency of the witnesses and also under objection to the relevancy and materiality of their testimony, and as if there had been no contradictory testimony offered thereto.

The stipulation provides as follows:

1. On February 21, 1928, Roman J. Smyser acquired by deed, wherein J. M. Gross and his wife were the grantors, dated on the same date and now recorded in the Office of the Recorder of Deeds in and for York County, Pa., in Record Book 24-B, p. 449, the tract of land mentioned in the appraisement of the estate of Karvan A. Smyser, deceased, for inheritance taxes and therein designated as tract no. 1.

2. On the same day Roman J. Smyser executed and delivered a purchase money mortgage to J. M. Gross for $15,000, which mortgage is recorded in the recorder's office aforesaid in Mortgage Book 8-Z, p. 121.

3. Subsequently, on or prior to August 15, 1932, it was agreed between Roman J. Smyser and J. M. Gross that the farm shall be offered at public sale, after proper advertisement, and that J. M. Gross will accept the price at which said farm is sold in payment of his mortgage, and upon the payment of said price to him he will satisfy said mortgage.

4. Pursuant to the agreement, the sale of the farm was advertised and a public sale thereof was duly held, and the property was struck down to Enos B. Brenneman at the price of $7,958.57, on conditions requiring the payment of 10 percent at the time of the sale or soon thereafter and the balance of the purchase price on April 1, 1933.

5. Subsequent to the sale, Karvan A. Smyser, decedent, agreed with Roman J. Smyser that he, Karvan A. Smyser, shall pay to J. M. Gross the amount at which said property was sold and shall pay Enos B. Brenneman the sum of $400 for the cancellation or surrender of his rights under the aforesaid sale of the farm, and pay certain expenses of the sale and other obligations of Roman J. Smyser, all of which amounted to $8,400, and that thereupon Roman J. Smyser shall convey the farm to Karvan A. Smyser, and that thereafter whenever Roman J. Smyser shall pay to Karvan A. Smyser $8,400, with interest at five percent, said Karvan A. Smyser shall reconvey said farm to him, Roman J. Smyser.

6. Thereafter, pursuant to the agreement, Karvan A. Smyser did pay to J. M. Gross and Enos B. Brenneman and others the total sum of $8,400, and Roman J. Smyser conveyed the farm to Karvan A. Smyser, in fee simple, by his deed dated April 13, 1933, and recorded in the recorder's office aforementioned in Deed Book 25-N, p. 302, without any mention of the oral agreement or any particulars thereof or defeasance or conditions whatever written into the deed.

7. The oral agreement and condition aforesaid was not reduced to writing.

8. After said conveyance of the farm to Karvan A. Smyser, Roman J. Smyser remained in possession of the farm and continued in possession thereof, without interruption, to this date, cultivated the farm and received all the income thereof, paid the taxes thereon, made improvements on the farm and paid to his father, Karvan A. Smyser, five percent interest on $8,400 from time to time.

9. At the time of the decease of Karvan A. Smyser interest on the $8,400 remained unpaid for 11 months, amounting to $385.

10. Subsequent to the execution and delivery of the aforesaid deed of Roman J. Smyser to Karvan A. Smyser, said Karvan A. Smyser informed the other children of Karvan A. Smyser, namely, Wilbur H. Smyser, Mary M. Smyser, and Virgin C. Roth (they with Roman J. Smyser being all the children of Karvan A. Smyser and there being no issue of a deceased child of said Karvan A. Smyser), that he, Karvan A. Smyser, holds the farm under an agreement with Roman J. Smyser requiring him, Karvan A. Smyser, to reconvey the farm to Roman J. Smyser upon the payment to him of the sum of $8,400, together with interest at five percent, and requested each of them that in case he should not make said reconveyance in his lifetime they should convey their interests in the farm to Roman J. Smyser upon the payment to them of three fourths of $8,400 and interest.

11. Reconveyance was not made by Karvan A. Smyser in his lifetime.

12. Karvan A. Smyser, by his will duly probated before the Register of Wills of York County, Pa., and now recorded in Will Book 3-X, p. 605, gave the residue of his estate, which included any interest that he may have had in the farm, to his four children, the aforesaid Wilbur H. Smyser, Mary M. Smyser, Virgin C. Roth, and Roman J. Smyser.

13. In the process of the settlement of the estate, Roman J. Smyser paid to his brother and sisters each the sum of $2,196.25, being one fourth of $8,400, plus $385 interest, and thereupon Wilbur H. Smyser, Mary M. Smyser, and Virgin C. Roth conveyed their undivided interest in fee simple in the farm by a deed dated May 25, 1943, and recorded in the Office of the Recorder of Deeds of York County, Pa., in Deed Book 29-X, p. 228, to the aforesaid Roman J. Smyser.

14. On July 6, 1943, by written agreement now recorded in the recorder's office at York, Pa., in Deed Book 29-W, p. 555, Roman J. Smyser agrees to sell the farm to Beauchamp E. Smith and Josephine D. Smith, his wife, as tenants by entireties, for the sum of $25,000.

All relevant records of the register's office and the clerk of the orphans' court which pertain to the issue here raised are part of the record of this case and shall be considered as offered in evidence for such purpose.

We find further from the records offered in evidence that the mortgage from Roman J. Smyser to J. M. Gross was satisfied April 13, 1933; that decedent died February 27, 1943, and his will was probated on March 4, 1943. The transfer inheritance tax appraisement appraising the farm at $25,000 was filed February 28, 1944.

It is from the appraisement of the farm mentioned in the stipulation at the value of $25,000, the price at which Roman J. Smyser had agreed to sell it, that this appeal has been taken, and it is the contention of appellants, as stated by their objections in the appeal, that the parol agreement aforesaid between Karvan A. Smyser, decedent, and Roman J. Smyser, his son, was a defeasance to the deed from the father to the son and had the effect of reducing said deed to a mortgage only and that the interest of decedent in the farm was only the sum of $8,400, the amount the father expended, plus $385 interest due thereon at the father's death, or

a total sum of $8,785 at which the farm should have been appraised.

In objecting to the competency of the witnesses to testify to the facts contained in the stipulation, the Commonwealth perhaps assumed that the four children of decedent would have been called for that purpose and that under subsection (e) of section 5 of the Evidence Act of 1887 they would have been incompetent to so testify. Counsel for the Commonwealth does not point to any appellate court decision in which the question of the competency of witnesses under these circumstances has ever been considered, but counsel for appellants cited Esbenshade's Estate, 6 D. & C. 520, and Watson's Estate, 23 D. & C. 669, directly deciding, and we think for very good reasons, that the Evidence Act of May 23, 1887, P. L. 158, does not render a legatee incompetent to testify as to events in the lifetime of a decedent on an appeal from an inheritance tax appraisement.

If Roman P. Smyser, the son, had started a proceeding for specific performance of the alleged parol agreement between him and his father, he undoubtedly would have been incompetent as a witness because he would have been testifying against his father's estate with reference to a thing or contract in action to which he was the survivor, but this proceeding is not intended for the purpose of, nor could it place the title to the farm in Roman J. Smyser, because he already has title to it by deed from his brother and sisters; neither can this proceeding be looked upon as a defense of his title. The testimony of all four of the children of decedent goes only in reduction of the appraisement and would therefore be in favor of their father's estate rather than against it. Furthermore, there is no dead party to a thing or contract in action because the Commonwealth's right of action did not arise until the death of decedent.

We, therefore, hold under these circumstances and the authorities above cited, that if the children of de-

cedent had been called as witnesses they would have been competent to testify. But we observe that the stipulation does not reveal who were to have been called as witnesses by appellants nor their interest in the issues involved. Therefore, under these circumstances and under the authority of Friend, Conservator, v. Kuhn, 316 Pa. 233, and Federal Reserve Bank of Phila., assignee, v. Gearon, 331 Pa. 65, we are justified in assuming that competent witnesses would have been called by appellants and that they would have testified to the facts contained in the stipulation and, in the absence of countervailing evidence, we are bound to find the facts so stated to be true, for it would be capricious on our part to do otherwise.

The Commonwealth invokes the Act of June 8, 1881, P. L. 84, as amended by the Act of April 23, 1909, P. L. 137, sec. 1 of which provides in part as follows:

"No defeasance to any deed for real estate, regular and absolute upon its face . . . shall have the effect of reducing it to a mortgage, unless the said defeasance is made at the time the deed is made, and is in writing, signed . . . and delivered by the grantee in the deed to the grantor; . . . ."

Based on this act of assembly, the Commonwealth contends, first, that the alleged parol agreement under which the father was to convey the farm to the son is irrelevant and immaterial for the purpose offered and, second, that if any legal effect is to be given to the parol agreement between the father and the son it must be construed merely as an option agreement granted by the father to the son to repurchase said farm and, under the authority of McLure Appeal, 347 Pa. 481, and Dellone Appeal, 347 Pa. 486, such an agreement does not oust the jurisdiction of or control the Commonwealth's appraiser nor create a limitation on value binding the Commonwealth, but may be considered by the appraiser, with all the other evidence, in determining the appraised value of the farm.

As to the first contention of the Commonwealth, it being the only objector to the proof of the alleged parol defeasance, it may well be doubted whether the Commonwealth is in position to object for the reason that it was not a party to the parol agreement between the father and the son by which the parol defeasance is alleged to have been created.

In Houston's Estate, 5 Dist. R. 413, Judge Ashman, of the Orphans' Court of Philadelphia County, in a proceeding for specific performance of a parol agreement for the transfer of real estate after the death of the owner, doubted the right of the Commonwealth to plead the statute of frauds, and in the Estate of Robert Huey, deceased, 41 (O. S.), Pitts. 470, Judge Hawkins, of the Orphans' Court of Allegheny County, in a proceeding to assess collateral inheritance tax against real estate subject to a similar parol agreement, also held that the Commonwealth had no right to plead the statute of frauds unless it could be shown that there was an intent to evade the tax. In Williams et ux. v. Moodhard, 341 Pa. 273, at page 281, the Supreme Court held that the Act of April 8, 1881, as amended by the Act of 1909, may be avoided in the same manner as the statute of frauds of April 22, 1856, P. L. 532.

But, notwithstanding that the Commonwealth may or may not have the right to raise the objection, this appeal comes before the court on a hearing de novo: Clabby's Estate, 308 Pa. 287, with power to reduce or increase the appraisement: McLure Appeal, supra; it still becomes the duty of the court to determine, not whether the appraiser erred in his appraisement of the farm, but what is the fair and conscionable value at which the estate or interest of this decedent therein should be appraised.

The Commonwealth makes out a prima facie case by the introduction of the appraisement in evidence, and the burden is then cast upon appellants to offer their evidence in reducing it. We take it from the facts stated

in the stipulation, in the absence of evidence to the contrary, that if decedent was the sole and absolute owner of the farm at the time of his death, its appraisement at $25,000 is correct, while on the other hand if appellants are permitted to and do satisfactorily prove that decedent's interest in the farm was that of a mortgage, the appraisement of his interest should then be only the sum of $8,785.

What then is the effect of the Act of June 8, 1881, as amended by the Act of 1909, above referred to?

The Supreme Court, in Williams et ux. v. Moodhard, supra, in giving consideration to said act of assembly, held, at page 280:

"It has frequently been pointed out that the sole purpose of the statute of frauds [Sec. 4, of the Act of April 22, 1856, P. L. 532] is to prevent a fraudulent claim of an interest in land resting on parol evidence; it is designed only to protect the holder of the title by forbidding the assertion of a right or interest in real estate by one who can show no written basis for the claim. Therefore the title holder may waive the benefit of the statute, and may state in his pleadings, or in his testimony in the proceedings, that he did in fact enter into an oral agreement when the title was conveyed to him, and, if he does so state, the oral agreement will be enforced by the court: Prospect Dye Works v. Federal Insurance Company, 33 Pa. Superior Ct. 223, 226; Hamnett v. Monongahela Trust Co., 223 Pa. 247, 251, 72 A. 512, 513; Sferra v. Urling, 328 Pa. 161. . . . Thus a parol trust becomes a valid and enforceable one if, in the course of litigation, it is confessed by the trustee: Kauffman v. Kauffman, 266 Pa. 270, 275, 109 A. 640, 642; Faunce v. McCorkle, 321 Pa. 116, 119, 183 A. 926, 927; Metzger v. Metzger, 338 Pa. 564. . . . There would seem to be no basis for a distinction between permitting a grantee in a deed absolute on its face to confess that he holds the property under a parol trust and his right under such a deed to assert that he holds title

subject to a defeasance. Indeed, under the amendatory Act of April 23, 1909, P. L. 137, he could at any time execute the defeasance in writing and thus make the transaction conform with the requirement of the statute."

It has also been held in Kirk et al. v. Ford et ux., 330 Pa. 579, that the requisites of proof to avoid the operation of the statute of frauds are the same in both a parol sale and a parol exchange, but a claimant relying upon a parol agreement to avoid the statute must present evidence of the same that is "direct, positive, express and unambiguous", or, as stated by the Supreme Court in Tetlow's Estate, 321 Pa. 305, at page 310, the proof of a parol contract to avoid the statute of frauds might be proved by circumstances and that there was no need of express proof. If conviction is brought home to the mind, it is sufficient. It is immaterial whether proof be by the oath of a person who was present and heard the contract or by evidence of a variety of circumstances, such as a confession of a party, payment of purchase money, delivery of possession, etc., which, taken together, leave the mind in no doubt as to the existence of the contract.

We think this is particularly true in the instant case because of the relationship between the parties, that of father and son, as pointed out in Metzger v. Metzger et al., 338 Pa. 564, where the court held that proof of the mere breach of an oral agreement to hold in trust for, or reconvey to the grantor, is not sufficient to establish a parole trust in lands but "Where . . . the relationship between the grantor and grantee, by reason of close kinship or other circumstances, was, of itself, such as to justify the grantor in placing confidence in the belief that the grantee would keep the faith reposed in him and this relationship was clearly the inducement to the grant, the rule is otherwise."

We, therefore, hold, under the above authorities, that the facts stated in the stipulation are relevant and ma-

terial and, if of sufficient weight to come within the rule of requisite proof to avoid the statute of frauds, may establish a parol defeasance to the deed from the father to the son notwithstanding the Act of 1881 and its amendment.

The question then is, Do these facts do so?

In Wallace v. Smith, 155 Pa. 78, the Supreme Court held, in a case arising prior to the Act of June 3, 1881, that nothing was better settled by a long line of decisions than that a conveyance of land, intended to operate merely as a security for money, was, in effect, a mortgage not only as between the parties themselves but also as to those who had notice of the transaction, but that the intention of the parties had to be proven by clear, precise, and indubitable evidence. The court further said that there are certain indicia of intention which frequently occur and when they do exist, they are always looked to. Among these are the sufficiency of the price paid; whether or not existing securities or evidences of indebtedness were given up or cancelled; whether there was any obligation to repay the purchase money; and whether the grantee entered into immediate possession; to which we may add that there are other indicia of intention such as retention of possession by the grantor who enjoyed full use of the property conveyed; payment of taxes and making improvements thereon; and payment of interest on a fixed sum to the grantee. All of these latter indicia we find present in the instant case.

Justice Clark pointed out in Huoncker et al. v. Merkey, 102 Pa. 462, 466, " 'Each case must, of course, to a great extent, depend upon the circumstances peculiar to itself.' "

In Frazier v. Foreman, 269 Pa. 13, a widow received a fund of several thousand dollars for the use and benefit of herself and five children, through public subscriptions as a donation on account of the death of her husband, who lost his life in the discharge of his duty as a

fireman. She invested this fund in real estate in her own name, remarried and died. In her will she declared that the real estate was bought with the money donated as aforesaid and placed in her hands for the benefit of herself and children. The Supreme Court held that the declaration contained in her will was a declaration against interest and was evidence in the action of eject-ment. A verdict was rendered in favor of defendants.

Karvan A. Smyser, decedent, not only admitted to his other children the parol agreement between himself and his son but requested them, should he die without having made a reconveyance in his lifetime, to convey their interests in said farm to his son, Roman J. Smyser, upon payment of their respective proportionate parts of $8,400 and interest. This admission of the parol agreement and request is not what may ordinarily be termed a loose declaration of a decedent, but is a solemn statement made in contemplation of his death, and such a declaration against interest, as between father and son, carries with it great weight; and, when taken in connection with the other indicia of intention appearing in the case and the fact that the decedent's other children carried their father's request through by making a conveyance to their brother, meets the requisites of proof and is convincing and persuasive to the court's mind that the father and son intended the deed to the farm to operate merely as security for moneys advanced by the father to the son and hence is to be construed as a mortgage and we do so construe it.

In addition to the decisions already referred to, there are many others which we think sustain our conclusion, such as Hartley's Appeal, 103 Pa. 23, Gaines v. Brockerhoff et al., 136 Pa. 175, Null et al. v. Fries, 110 Pa. 521, Mellon et al. v. Lemmon et al., 111 Pa. 56, Houser v. Lamont, 55 Pa. 311, and Odenbaugh v. Bradford, 67 Pa. 96.

In approaching the issues involved in this proceeding, we are not dealing with exemptions but with the

essential right to tax and, therefore, the well-recognized principle is applicable that the burden is on the Commonwealth to show that it clearly comes within the tax statute; if there is doubt or uncertainty as to the imposition of the tax, that doubt or uncertainty must be resolved in favor of the taxpayer: Barber's Estate, 304 Pa. 235; Commonwealth v. Repplier Coal Co., 348 Pa. 372, at page 380, and cases therein cited.

The Commonwealth relies upon McLure Appeal, supra, but in view of the conclusion which we have already reached, we think the doctrine of McLure Appeal is not applicable because in that case decedent held both the legal and equitable title to the property taxed and was only under an option to sell at a specified price, while in the instant case we have found that decedent was in fact only a mortgagee and that the equitable title to the farm was in the son.

Further discussion seems to be unnecessary and we therefore enter the following decree:

And now, to wit, August 2, 1944, appeal sustained, and we now fix the value of the interest of decedent Karvan A. Smyser, as mortgagee in the real estate in controversy, for transfer inheritance tax purposes at $8,785.