## First National Bank of Bellefonte *versus* McManigle and Brown.

1. In a suit by a bank against endorsers on a discounted note, the defendants gave evidence that the maker had remitted money by mail directed to the cashier of the bank, in part payment of a note, of which this was a renewal. If the bank had authorized the sending by mail at its risk, this would be primâ facie, and if not rebutted, sufficient evidence of payment.

2. The bank not having requested the money to be sent by mail, the maker took the risk of so sending it.

3. The evidence was that the money was put into an envelope directed to the cashier, the envelope was then enclosed in a registered envelope and directed to the postmaster at Bellefonte, where the bank was located, and sent by mail. There was no evidence that the letter had been received by the postmaster at Bellefonte; the cashier was a witness for plaintiff and was not asked whether the money had been received. *Held,* not sufficient evidence of payment to submit to the jury.

4. The two postmasters were the agents of the maker for the transmission of the money.

5. The note in suit and a previous note in renewal were of the same âmount as the original note on which the payment was alleged to have been made ; this was an admission by the parties that the money remitted had not been received by the bank.

6. The first note fell due April 8th, the note in suit was dated in July ; the maker testified that there was no intermediate renewal : the cashier testified that there had been a renewal April 8th, to fall due July 9th. On that day the maker wrote to the cashier, enclosing the note in suit, saying he could not reduce it, and promising to pay all when the note sent fell due. This was evidence as part of *res gesta* to show renewal of first note, and that the note in suit was a renewal of the latter.

7. There is no presumption of law, that a letter mailed to one at the place he usually receives his letters, was received by him.

8. Tanner *v.* Hughes, 3 P. F. Smith 289, remarked on.

May 17th 1871.    Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Mifflin county :* Of May Term 1871, No. 102.

The First National Bank of Bellefonte, on the 22d of March 1869, brought an action of debt against William A. McManigle and James M. Brown as endorsers of a note drawn by A. F. Alexander, for $500, dated July 9th 1868, and payable in 90 days : the note had been discounted by the plaintiff, who was the holder.

On the trial before Woods, P. J., January 5th 1870, the plaintiff gave the note and protest in evidence and rested.

The defendants then offered to prove that a note of $500 was given by A. F. Alexander, endorsed by defendants and discounted at the bank of plaintiff. That before this note matured A. F. Alexander and plaintiff made an arrangement for its renewal. That the cashier sent by mail a letter to A. F. Alexander, the principal debtor, enclosing in it a blank note for $200, with instructions to get that note executed and returned on or before

[First National Bank of Bellefonte *v.* McManigle.]

the maturity of the note, to wit, April 8th 1868, with instructions to remit the $300, as a part payment of the note, which at that time would mature, together with the discount. A. F. Alexander, on receipt of the letter, signed it and got it endorsed as requested, and enclosed it, together with the discount and $200 in money, directed to the plaintiff, pursuant to the instructions given him by a registered letter, mailed at Milroy for the purpose. That afterwards, under a mistaken idea that he had no defence, and pursuant to the advice of counsel that he had no defence so far as the $300 is concerned, renewed the note by this note for which this suit is brought.

This offered for the purpose of showing payment and set-off.

The plaintiff objected to the offer : it was admitted and a bill of exceptions sealed.

A. F. Alexander testified : "Mr. Humes told me he could discount a note for me with these endorsers. I went to Bellefonte with the defendants as endorsers, and the bank discounted it. Just before the note became due I wrote to see if they would renew the note. I got an answer by mail, dated April 4th 1868." (This letter read.) "I had the note enclosed in the letter executed. On the 7th of April 1868, I took the note executed and $306.37 to the post-office at Milroy to Mr. Coplin the postmaster. He put the money and note in a registered package envelope, directed to the postmaster at Bellefonte. I done this in pursuance of the instructions I received in the letter. The money and note was sent to Mr. Harris, cashier."

W. V. B. Coplin testified :—

"On the 7th April 1868, Mr. Alexander gave me $306.37, together with a note of $200 to be sent to J. P. Harris, cashier First National Bank, Bellefonte. I enclosed the money and note in an ordinary envelope and directed it to J. P. Harris, cashier First National Bank, Bellefonte. I then enclosed that in a registered envelope directed to the postmaster at Bellefonte. I was at that time the postmaster at Milroy. I placed it in the mail-bag for Bellefonte."

A. F. Alexander further testified :—

"This note is a renewal of the original note for the whole amount. This is the first renewal of the note due 1st April 1868. I do not remember of any other renewal."

The defendants closed.

James P. Harris testified for the plaintiff :—

"I was cashier of the First National Bank, Bellefonte, in January 1868. We discounted a note in January for Mr. Alexander at 90 days—fell due April 8th 1868. I received this letter from Mr. Alexander, dated April 2d 1868." [Letter read, but not given in paper-book.]

"I enclosed him a note in pursuance of the request in this

[First National Bank of Bellefonte *v.* McManigle.]

letter. The note went to protest April 9th 1868. On June 2d I received a note from Mr. Alexander, ante-dated to April 8th 1868, which matured July 9th 1868. This was to relieve the one falling due April 8th 1868. On July 9th, I received this letter, dated July 9th 1868, from Mr. Alexander."

The plaintiff offered to read the letter, viz.:

"Milroy, July 9th 1868.

"Mr. Harris: Dear Sir:—I am compelled to send you my note, which is now due, with but the discount. I have made every effort to raise 20 per cent., but could not make it. I have money out but cannot get it now. Please renew, and at the expiration of 90 days I will try and pay the whole amount. By so doing you will very much oblige. A. F. ALEXANDER."

The defendants objected to the offer; it was rejected and a bill of exceptions sealed.

Witness said: "I received the note in suit to relieve the note falling due the 10th July 1868."

The plaintiff's points were:—

1. Defendants have showed no payment of this note in suit or any part thereof, and plaintiff is entitled to the verdict for the whole amount claimed.

4. If the jury believe that the money was sent, as testified to, yet there is no evidence it came to hands of plaintiff, and plaintiff is entitled to recover.

5. There is no evidence that any money was directed or sent to the plaintiff at any time.

The court charged: * * *

"The defendants allege that the drawer, Mr. Alexander, had sent to the bank by mail from Milroy $300, which should have been credited on the note for which this one was given as a renewal. To establish this allegation they have called Mr. Alexander, the drawer, and Mr. Coplin, the postmaster, who both testify this money was sent in a registered letter in the usual way. The plaintiff never gave credit for this amount to Mr. Alexander, and his endorsers now ask for this credit. The plaintiff resists this credit, alleging that if the money was sent as alleged, it was never received by the bank. [None of the officers of the bank have been called to show whether it was or was not received. Neither has the postmaster at Bellefonte been examined to show whether it ever came to that office or not. If the bank did not actually receive this money the defendants would not be entitled to credit for it in this action. When money is sent by mail it is always at the risk of the sender unless his creditor has directed him to send it in this manner. The money was sent by mail to the bank. Was it received? If it was, the defendants would be entitled to this credit.

[First National Bank of Bellefonte *v.* McManigle.]

If it was not received, then the plaintiff would be entitled to a verdict for the whole amount of the claim. This is the only question to be submitted to you."]

The court answered the plaintiff's points thus :—

" 1. This is so, unless the bank did actually receive the money sent by mail.

" 4. There is no positive evidence that the bank received the money so sent. There is evidence that it was put in the mail at Milroy, in a registered envelope, for the plaintiff. Whether it was actually received by the bank we submit as a question of fact for you to find.

" 5. There was evidence that the money was sent in a registered letter in the usual way."

The verdict was for the plaintiff for $206.90.

The plaintiff took a writ of error and assigned for error—

1, 2. The rulings as to the evidence.

3, 4, 5. The answers to the points.

6. The part of the charge in brackets.

*Elder* and *Reed*, for plaintiff in error.

*Alexander* and *Woods*, for defendants in error.

The opinion of the court was delivered, October 30th 1871, by

WILLIAMS, J.—Under the defence set up in this case, the burthen of showing that the note in suit was given in renewal of a previous note for the same amount, on which the maker had paid three hundred dollars, was on the defendants. If the bank authorized the maker to send the money by mail at its risk, then proof that it was enclosed in a letter properly directed and put into the post-office would be primâ facie, and, if not rebutted, sufficient evidence of payment. But if the bank did not request or authorize it to be sent by post, then the maker, in sending it by mail, took upon himself the risk of its loss by the way, and if it was not received by the bank, its deposit in the post-office was no payment. We have not been furnished with a copy of the cashier's letter of the 4th of April 1868, authorizing a renewal of the note for the residue on payment of a part thereof, but from the answers of the court to the plaintiff's second and third points, we are perhaps bound to presume that it did not authorize the maker to remit the money by mail at the risk of the bank. If so, was proof that the money was enclosed by the postmaster at Milroy in an envelope directed to the cashier of the bank at Bellefonte, and then enclosed in a registered envelope directed to the postmaster of Bellefonte, and deposited in the mail-bag for that place, sufficient evidence to justify the jury in finding that the bank had received it? There is no presumption of law that a letter, mailed

to one at the place he usually receives his letters, was received by him. A strong probability of its receipt may arise, as was said in Tanner *v.* Hughes, 3 P. F. Smith 289, and the fact of its deposit in the mail-bag in connection with other circumstances may be sufficient to warrant the court in referring the question of its receipt to the determination of the jury. The only other possible circumstance in this case tending to show that the bank received the money, is the fact that the cashier, who was examined as a witness on behalf of the bank, was not asked whether he had received it or not. But if the evidence given by the defendants did not make out a primâ facie case of payment, the plaintiff was not bound to prove a negative. If the letter enclosing the money had been mailed directly to the cashier, the jury might possibly have been warranted in finding that it was received by the bank. But it was not mailed directly to the cashier, but to the postmaster at Bellefonte, and it could not have been received by the bank, except at the hands of the postmaster or one of his deputies; and, under the regulations of the post-office department, it would not have been received by the bank without the receipt of the cashier in a book provided by the department, and kept by the postmaster for that purpose. If then the bank received the money, the defendants had it in their power to show its receipt not only by the postmaster at Bellefonte, but by the production of the cashier's receipt: and they were bound to give the best evidence in their power, and not leave to conjecture a fact which, if true, was susceptible of direct and positive proof. Under the circumstances, it is clear that the evidence of the bank's receipt of the money was not sufficient to justify the court in submitting the question to the jury. The maker of the note virtually constituted the postmaster at Milroy and the postmaster at Bellefonte his agents for the transmission of the money, and he was bound to call and examine the latter before he had the right to ask the jury to find that the bank had received it. As it was, the jury were left to infer from the deposit of the registered letter at Milroy, in the mail-bag for Bellefonte, its receipt by the postmaster of that place, and his delivery of the letter enclosed in the registered envelope to the cashier of the bank to whom it was addressed. They were allowed to make this double inference, and to find that the bank had received the money not only without any direct proof of the fact, when the means of positive proof were in the defendant's power, but in the face of the fact that the maker had subsequently given, and the defendants had endorsed two notes of the same amount in renewal of the note on which the money sent by mail was to be applied. The giving of the renewed notes was tantamount to an admission that the money had not been received by the bank, and there was no evidence tending to rebut the admission. The court was therefore in error in submitting the

[First National Bank of Bellefonte v. McManigle.]

question of its receipt to the determination of the jury. The evidence embraced in the first offer was properly received. It was a link in the chain of evidence showing payment. But Alexander's letter to the cashier of the 9th of July 1868, referred to in the second assignment, was improperly rejected. It ought to have been received in connection with the testimony of the cashier as a part of the *res gestæ*, and to show that the note in suit was not the first renewal of the note which fell due on the 9th of April 1868, as testified to by Mr. Alexander on his cross-examination. The learned judge seems to have misapprehended the purpose of the offer. It was not offered for the purpose of showing that Alexander gave the note of the 9th of July, but to show that the note which fell due on the 9th of April was renewed by another note of that date, in renewal of which the note of the 9th of July was given.

What we have said disposes of all the assignments except the fifth, in which we discover no error; but for the errors in rejecting the letter of the 9th of July 1868, and in submitting the question of the bank's receipt of the money remitted by mail to the cashier, the judgment must be reversed.

Judgment reversed, and a *venire facias de novo* awarded.