## Kenney *versus* Altvater & Co., for the use of Marks.

1. Altvater and Marks, being partners as stone-masons, and having contracts for buildings, were purchasing stone for their business; Altvater sold tools to the defendant, owning a stone-quarry, under a contract that they should be paid for in stone; the stone was delivered at the time specified, the firm having been dissolved previously; Altvater used them for his own purposes. *Held*, that the payment for the tools by delivery of stone to Altvater was good, although after dissolution, if defendant did not know of the dissolution.

2. The purchase of stone by Altvater was within the scope of the firm's business, and the payment by delivery of the stone to him was in fulfilment of the contract.

3. The misapplication by Altvater of the stone did not impair the validity of the payment.

4. A delivery in good faith to one partner, according to a contract, is a delivery to both; each having authority to receive it.

5. A person dealing with a firm must have actual notice of dissolution, in order to avoid his transactions with one of the partners after dissolution.

6. A letter stating the dissolution of a firm, sent by mail properly directed to defendant, with evidence that the letter was not returned from the Dead Letter office, is not sufficient, without other evidence of its receipt, to charge defendant with notice of the dissolution.

7. With slight corroboration a jury might find such notice.

8. The rule that letters properly directed and marked are evidence as of the dishonor, &c., of negotiable paper, is restricted to commercial paper.

October 9th 1874. Before Agnew, C. J., Sharswood, Williams, Mercur and Gordon, JJ.

Error to the District Court of *Allegheny county :* Of October and November Term 1874, No. 23.

This was an action of assumpsit, brought January 3d 1873, by Fred Altvater and Joseph Marks, partners as Altvater & Co., for the use of Joseph Marks, against Samuel Kenney.

The claim of the plaintiffs, as set out in the affidavit of Marks, was for quarrying tools specified in a bill accompanying the affidavit; it amounted to $162.01; the articles were charged in the bill as delivered February 10th 1872.

By his affidavit of defence, the defendant averred that he had paid the full amount of the claim, December 19th 1872 ; that he had had nothing to do with Marks, but only with Altvater, to whom he paid the money in full, as appeared by a receipt to a bill annexed to the affidavit, amounting to $162.01, which was the entire amount he owed Fred Altvater and Joseph Marks.

The bill accompanying this affidavit, contained the same items as that annexed to the affidavit of claim ; the receipt was at the foot of the bill, was without date and was signed, " Fred Altvater & Co., by H. Altvater."

The defendant's affidavit did not deny the correctness of plaintiff's bill.

The case was tried November 20th 1873, before Kirkpatrick, J.

The plaintiff gave in evidence his bill of particulars as filed, and rested.

The defendant testified that he had a stone-quarry at Baden, Beaver county, and bought the tools mentioned in the bill from Altvater at the date of the bill, with the understanding that he was to furnish Altvater with stone, and Altvater would take stone for the tools defendant got from him and deduct them out of the bill ; the stone were furnished to Altvater and he used them wherever he wanted them ; he began furnishing the stone in March 1872, and furnished Altvater about $4300 worth in that year.  The bill in suit was settled according to the contract ; Altvater paid him what money was coming to him and charged him with the bill for tools ; he receipted the bill and gave it to defendant.

On cross-examination he said, that he did not know Altvater was doing business for himself when he delivered the stone and made the settlement ; he did not know anything at all about the dissolution of the partnership between Altvater and Marks.  Esquire Anderson wrote to him about the claim some time through the summer ; when he got the receipt he did not know that the firm was dissolved ; did not know it till he got the notice from Esquire Anderson.  The bill for the tools came with them ; defendant never had any dealings with Marks ; he had furnished far more stone than the bill for the tools came to before he received notice from Anderson.

Altvater testified that he and defendant agreed at the request of defendant to furnish defendant quarry tools and take their price out in stone ; that he delivered the tools to defendant and he delivered witness stone ; some of the stone went to the South Pittsburg schoolhouse, which was a firm contract ; Marks got some of the money out of it ; witness generally drew the money ; defendant and he settled for the tools ; defendant commenced to deliver stone in March 1872 and stopped in the fall of 1872.

On cross-examination he said, the firm was dissolved March 4th 1872, and on the 18th witness commenced business in his own name ; after the dissolution the work on the contract for the South Pittsburg schoolhouse was done for himself and not for the firm. He settled defendant's bill after the dissolution ; but before this suit was brought.

In rebuttal, plaintiffs gave evidence that the firm was dissolved March 4th 1872.

[Kenney *v.* Altvater.]

Esquire Anderson testified, that Marks in December 1872 placed in his hands a bill against the defendant, and he wrote to defendant to Baden, requesting him to attend to it; defendant some days after called at his office and said that he had settled it that day.

J. Greene, a bookkeeper of Marks, testified that he had made out a bill similar to that in suit and sent it to defendant, directed "Baden, Beaver county," in the second or third week of April; he wrote him that the firm was dissolved and that the bill was to be paid to Marks; witness never got an answer; nor ever got the letter from the Dead Letter office; it was signed in Marks's name.

Marks testified that he had never received the letter sent by his clerk, Greene, to defendant, from the Dead Letter office.

The plaintiff's points which were affirmed were :—

1. If the jury find that the claim sued for was a partnership debt due to the firm, Altvater and Kenney had no right to apply or settle the same by application of said account in settlement of a debt contracted by Altvater individually, in the purchase of stone sold and charged by Kenney to Altvater.

2. That the defendant had no right to settle with Altvater individually, and take credit for the account due to Altvalter & Co., after notice of the dissolution of the firm, and that Jos. Marks was the liquidating partner, with the sole right to collect the debts due to the firm.

3. That the rule of law stated in the second point would be the same whether the debt due to the firm was payable in money or chattels.

The defendant's points and their answers were :—

1. If the jury believe from the evidence that the contract between the parties as to the sale of the tools sued for, was that the defendant was to deliver stone to plaintiff in payment of the same, and that the defendant, in the opening of the spring, went on and delivered stone to Altvater in payment of the same before he received notice of the dissolution of the firm, that such payment was good.

Answer: "This point, as presented, is refused; if this point had suggested the delivery of the stone to Altvater & Co., instead of Altvater alone, we would have affirmed it; as it is already stated it is refused."

2. To a party who has an account or dealings with a firm, personal notice of a dissolution of said firm must be given, and proof of a notice sent by mail is not sufficient without proof that the same was received by the defendant.

Answer: "This point is refused; it is in effect asking us to say in this case, as matter of law, that the defendant had no notice of the dissolution of the firm of Altvater & Co. This is a question of fact for the jury, which we leave to be found by them from all the evidence in the cause bearing upon this branch of the case. Notice

[Kenney v. Altvater.]

is intended to give knowledge, and, therefore, knowledge, however acquired, generally renders notice unnecessary : whether a person has actual knowledge of a dissolution is a question of fact for the jury."

3. If the jury believe from the evidence, that a contract was made in February 1872, between the plaintiffs and the defendant, as to the sale of the tools and the delivery of the stone mentioned, any future contract between Altvater and Marks as to the dissolution of their firm could not affect the defendant Kenney, who was not a party to the same.

Answer : " This point is affirmed."

The verdict was for the plaintiffs for $178.21.

The defendant took a writ of error : he assigned for error :—

1. Affirming plaintiffs' first point.
2. Affirming plaintiffs' second point.
3. Affirming plaintiffs' third point.
4. The answer to defendant's first point.
5. The answer to defendant's second point.


*J. Barton*, for plaintiff in error.—Actual notice of dissolution of a firm must be given to persons dealing with it : Watkinson *v.* Bank of Pennsylvania, 4 Wharton 482.

*A. M. Brown*, for defendants in error.


Mr. Justice Mercur delivered the opinion of the court, November 16th 1874.

We discover no merit in the first three assignments of error.

The fourth assignment involves the validity of the payment made by the plaintiff in error.

Altvater and Marks constituted the firm of Altvater & Co. When the bill of goods was purchased, for which Marks now claims to recover, they were engaged in business as stonemasons; they were also contractors in the erection of buildings. As such they were purchasing and using stone. Altvater sold the goods to the plaintiff in error under an express agreement that they should be paid for in stone the next spring. The stones were delivered at the time specified and accepted by Altvater. In the intermediate time the firm had been dissolved. Altvater used these stones for his individual purposes. If the firm had not been previously dissolved, the delivery of the stones to one of the partners in pursuance of the contract, would have unquestionably been a good payment. The contract of their purchase by Altvater was within the general scope of the partnership business. The payment thus made by the plaintiff in error was in fulfilment of the contract. The misapplication by one of the firm did not impair the validity of the payment. Nor did it matter that the payment was made to

[Kenney *v.* Altvater.]

Altvater after the dissolution, if it was made without notice thereof.

The learned judge makes a distinction between a delivery to Altvater and one to Altvater & Co. A delivery in fact to one of the partners in good faith according to the contract, was in law a delivery to both. Each member of the firm had authority to receive the payment thus made. The receipt of one was the receipt of both. The distinction under the evidence, we think, is unsound, and this assignment is sustained.

The fifth assignment relates to what notice of the dissolution is necessary to affect one previously dealing with the firm. The effort was to charge the plaintiff in error with notice by proof that a letter duly mailed to his address was sent by Marks's bookkeeper, notifying him of the dissolution and requesting payment of the bill of goods to be made to Marks. This was followed by proof that the letter was not returned from the Dead-Letter office. There was no proof going to show that notice was given in any other manner. Hence, if any actual notice was received, it was personal notice. He was entitled to actual notice : Story on Part., § 161; Watkinson *et al. v.* Bank of Pennsylvania, 4 Wharton 482; Brown *v.* Clark, 2 Harris 469. Letters properly directed and duly mailed are sufficient evidence of notice of the dishonor of bills or non-payment of negotiable notes. This rule is restricted to commercial paper. It establishes no such legal conclusion in other business relations : Tanner *v.* Hughes, 3 P. F. Smith 289. Hence in First Nat. Bank of Bellefonte *v.* McManigle, 19 P. F. Smith 156, it was held that there is no presumption of law that a letter directed and mailed to one at the place where he usually received his letters, was received by him. It is nevertheless a step towards proving actual notice. With slight corroborative evidence, a jury might be justified in finding such notice.

While the learned judge did say in answer to the second point submitted by the plaintiff in error, that whether a person has actual knowledge of a dissolution is a question of fact for the jury, and that knowledge, however acquired, generally renders notice unnecessary, yet it is not such an answer as the point demanded. The court was asked to charge that "proof of a notice sent by mail is not sufficient, without proof that the same was received by the defendant." The answer was not specific. It was calculated to divert the attention of the jury from the only form of notice of which there was any substantial proof. In not affirming this part of the point, the court erred, and to that extent the assignment is sustained.

Judgment reversed, and a *venire facias de novo* awarded.

Mr. Justice SHARSWOOD dissented from the point as to notice of dissolution.