# Susquehanna Mutual Fire Insurance Company *versus* Tunkhannock Toy Company, Limited.

1. Where a policy of fire insurance contains a provision that persons sustaining loss " shall forthwith give notice of said loss to the secretary of the company," and shall subsequently by within a given time deliver to the secretary a particular account of such loss, the sending of the preliminary notice of loss *by mail*, properly addressed, is prima facie evidence of service of such notice, and in the absence of denial of its receipt, the jury may infer actual notice therefrom.

2. A certificate of the levying of an assessment, signed by the president and secretary, under the company's seal, as provided for by the Act of May 1st 1876, Pamph. L. 67, is admissible in evidence on behalf of the defendant in a suit upon the policy, as prima facie evidence of the fact of such assessment. That the certificate was dated after suit brought is immaterial, where the assessment was levied prior to the cause of action.

3. Where a by-law of a mutual insurance company, in force at the date of the policy, provided that five directors out of thirteen should be a quorum, it is error in a suit on the policy, to exclude evidence of the levying of an assessment at a meeting at which only five directors were present.

March 17th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Wyoming county:* Of January Term 1881, No. 192.

[Susquehanna Mut. Ins. Co. v. Toy Co.]

Covenant, by S. Judson Stark et al., liquidating trustees of the Tunkhannock Toy Company (Limited), against the Susquehanna Mutual Fire Insurance Company of Harrisburg, Pa., on a policy of fire insurance, dated May 8th 1877, for $1500, issued by the company defendant, on a factory and machinery belonging to the Tunkhannock Toy Company (Limited).

On the trial, the plaintiff put the policy in evidence, and proved that the insured premises were totally destroyed by fire on December 16th 1877. Plaintiff's counsel offered to prove, by the secretary of the company plaintiff, that, on December 19th 1877, he (the witness) deposited in the post-office at Tunkhannock, Pa., a preliminary notice of the fire, addressed to the company defendant at Harrisburg, Pa., the place of their principal office. Objected to; admitted; exception. A copy of this notice, proved by the same witness, was admitted under objection and exception. Formal proofs of loss were delivered to the insurance company on December 29th 1877, and being produced on call, were read in evidence.

On behalf of the defendant, it was shown that the Susquehanna Mutual Fire Insurance Company was incorporated April 28th 1873, under the Act of April 2d 1856, and its several supplements. That the by-laws, adopted June 6th 1876, provided as follows:

"Sect. 3. Thirteen persons shall constitute a full board of directors, all of whom shall be male members of the company, above the age of twenty-one years, who shall manage the affairs of the company; five of whom shall constitute a quorum, and be fully competent to transact business at any of its meetings, which shall be binding upon the members, as if a full board had been in session. They shall determine the rates and terms of insurance, and limit the amount to be insured. * * *

"Sect. 26. If any assessment, that may hereafter be levied on a premium note, be and remain unpaid on the day fixed by the secretary for the payment of the same, shall render absolutely void all policies on which the assessment may remain unpaid as above, and be a full bar against such defaulting member for all losses that may occur during the time the assessment may so remain unpaid, and the directors shall retain such premium note or notes, and collect thereon all such sum or sums as may be due or become due thereon during the term for which it has originally been given.

"Sect. 35. Persons sustaining loss or damage by fire, shall forthwith give notice of said loss to the secretary of the company, and within thirty days after said loss shall deliver to the secretary a particular account of such loss, signed and sworn to by them."

The policy in suit expressly provided that it was made and accepted with reference to the by-laws and the conditions endorsed, which were made part of the policy, which conditions provided, inter alia, as follows:

"5. No insurance shall be considered as binding until the actual

cash payment of the premium; and should the annual interest, or any assessment that may be levied on the premium note given for this insurance, be in arrears and unpaid for the space of *thirty days* after notice and demand, then, and in every such case, this policy shall cease."

The defendant gave in evidence the premium note signed by the assured, for $536.25, in the usual form, and then offered in evidence a certificate signed by the president and secretary, with the seal of the company attached, dated January 17th 1881, certifying that a certain "assessment, No. 1 extra," was made July 13th 1877, and the sum of $48.75 was levied on the premium note of the plaintiff, which amount remains unpaid. Objected to, on the ground, inter alia, that the certificate is dated subsequently to suit brought. Objection sustained; exception. Defendant offered in evidence the following minutes of a special meeting of the board of directors, held July 13th 1877 :—

"Special meeting of the board, President Steever presiding. Directors present: Robinson, Garman, Bolender and Huntzinger. 1. The minutes of the last meeting were read and adopted. 2. The object of this meeting having been stated, the board considered the propriety of borrowing money, or so making an extra assessment upon the members' notes to meet existing losses, whereupon it was on motion Resolved, that the secretary be empowered and he hereby is authorized and directed to levy an assessment, extra No. 1, upon all the members' notes of the company, realizing an amount sufficient to cover all existing claims against the company, six per cent. pro rata, as per basis of assessment, as fixed by or under the company's tariff of rates, rules and by-laws, and to attach the penalty of suspension of any and all policies upon which the assessment is not paid on or before the day fixed for the payment of the same. * * *

"Whereupon, the business for which the special meeting was called having been disposed of, the board adjourned."

Objected to on the ground, inter alia, that there were only five directors present at the meeting. Objection sustained. (Third assignment of error.)

The defendant presented, inter alia, the following points :

2. That if the jury believe a notice was deposited in the post-office, addressed to the company, it would not be a compliance with the terms of the policy. Ans. "To this we answer that there is a presumption that a letter containing a notice of a loss by fire, directed to the home office of an insurance company, and duly mailed, is received by the company, and the jury may infer actual notice therefrom."

3. That the law does not presume a notice mailed to the secretary of the company, addressed to him at the place where he usually receives his letters and transacts his business, was received

[Susquehanna Mut. Ins. Co. *v.* Toy Co.]

by him. Ans. "A letter addressed to the secretary of an insurance company at the home office is the same as if directed to the company; if directed to him at any other place, it is not notice to the company."

Verdict and judgment for the plaintiff for $1633.74. The defendant took this writ of error, assigning for error (1, 4, 5) the answers to the above points and the admission in evidence of a copy of the preliminary notice of loss; (2), the rejection of the certificate of "assessment No. 1 extra," and (3), the rejection of the minutes of the special meeting of the board of directors on July 13th 1877.

*Wm. M. Piatt* (with whom were *Fleming & McCarrell*), for plaintiff in error.—Under the by-law and condition of the policy requiring the assured to forthwith give notice of loss, the company was entitled to actual, not presumptive notice. The plaintiff, in order to recover, must prove its delivery to the company, not to the post-office. The rule that notice by mail is sufficient is restricted to notice of protest of commercial paper. No such presumption of notice arises in other business relations: Tanner *v.* Hughes, 3 P. F. Smith 289; First Nat. Bank of Bellefonte *v.* McManigle, 19 Id. 156; Callan *v.* Gaylord, 3 Watts 324; Hodgkins *v.* Montgomery Co. Ins. Co., 34 Barb. 213; Patrick *v.* Farmers' Ins. Co., 43 N. H. 621; Kenney *v.* Altwater, 27 P. F. Smith 334.

Our chief defence was that the policy was forfeited or suspended at the time of the fire by reason of the non-payment of an assessment long overdue. The Act of May 1st 1876, Purd. Dig. 2025, provides that a certificate, properly authenticated, that the assessment was duly levied and remains unpaid shall be prima facie evidence of such facts. Yet the court excluded such certificate, on the interpretation that the Act of May 1st 1876 applies exclusively to suits brought by mutual insurance companies to recover assessments, and because it was dated subsequently to suit brought. No such limitation is to be found in the statute; and, as the *assessment* was made long before the fire, the date of the certificate was immaterial. The exclusion of the minutes of the resolution levying the assessment, on the ground that only five directors were present, was error. The by-laws in force at the date of the policy, by which the plaintiff as a member was bound, expressly provided that five directors should constitute a quorum. The court denied the power of the company to enact that a less number than a majority of the entire board of thirteen should be a quorum. But there is no such prohibition in the Act of April 2d 1856, Purd. Dig. 793, and its supplements, under which the company was organized. The general Act of April 10th 1868, Pamph. L. 80, relating to corporations fixes the number of directors at not less

than five nor more than fifteen, but does not prohibit less than a majority from being a quorum. The Act of April 15th 1869, Pamph. L. 29, by its terms only applies to corporations which may have increased the number of directors after their original organization. The Act of May 1st 1876, Purd. Dig. 2020, sects. 15 and 16, applies only to corporations organized under its provisions. The by-law fixing five as a quorum was within the power of the directors to make: Hoyt *v.* Thompson's Ex'r, 19 N. Y. 207. The plaintiff, being in default, could not recover, and the evidence of his default was improperly excluded: Washington Mut. Fire Ins. Co. *v.* Rosenberger, 3 Norris 373.

*S. W. Little* and *W. E. & C. A. Little*, for the defendant in error.—The proof of mailing a preliminary notice of loss to the secretary of the insurance company is prima facie evidence that it was received, which becomes conclusive when that officer is in court on the trial (as in this case), and does not deny its receipt. The same reasons which apply to commercial paper apply to notice of loss under a policy of fire insurance. While the point has not been expressly decided in Pennsylvania, notice by letter has been held good: West Branch Ins. Co. *v.* Helfenstein, 4 Wright 289; Lycoming Ins. Co. *v.* Bedford, 2 W. N. C. 529; Ins. Co. *v.* Monninger, 18 Ind. 352. But the company waived notice of loss by declaring the policy void for non-payment of assessment: Girard Life Ins. Co. *v.* Mutual Life Ins. Co., 9 W. N. C. 425 (*ante*, p. 15.) The certificate of assessment was properly excluded; it was secondary evidence at best, and was manufactured for the trial after suit brought. The resolution fixing the assessment was void because passed by only five directors out of thirteen. The by-law making five a quorum was not passed by the stockholders, but by the directors themselves, and was illegal. By the charter the power to make by-laws was vested in the *corporators* and their successors. By the common law where a corporate act is to be done by a definite number, a majority constitutes a quorum, and this is not changed by any statute applicable to this corporation. The plaintiff was seeking to enforce his contract as a party insured, not his rights as a member. In a mutual insurance company the rights and liabilities of the insured on his contract, and as a member, are dual and distinct: Rosenberger *v.* Washington Ins. Co., 6 Norris 207; Ins. Co. *v.* Connor, 5 Harris 136; Bradfield *v.* Union Mut. Ins. Co., 9 W. N. C. 436. If, therefore, the by-law was illegal, the insured, as a contracting party with the company, was not bound by it, even though he might be bound as a member.

Mr. Justice TRUNKEY delivered the opinion of the court, May 2d 1881.

Notice of dishonor of bills or non-payment of notes where the

parties do not live in the same town is usually sent by mail. This usage has settled into law, so that the legal presumption is conclusive that the notice was received from the fact that the sender duly delivered it in the post-office properly addressed. And when it may be sent by mail, if sent by a messenger, it must be delivered within the time that the mail would have taken it. Necessity and convenience led to the usage and legal presumption. Unless notice of dishonor be promptly given, the drawer of a bill and endorsers of a bill or note will be discharged from liability, and where the parties live at considerable distance the employment of a messenger would be burdensome.

Where a policy requires notice of loss to be given forthwith by the assured to the assurer, and is silent as to mode of service, is not the necessity equally great for adopting as a legal presumption, prima facie till disproved, that the assured received the notice from the fact that it was properly addressed and delivered in the post-office ? It is common to send by mail the policies, the notices of loss, proofs of loss, and, in case of mutual companies, the notices of assessment. In a valuable work (Wood on Ins. 702), it is remarked, that in the construction of the policy and its various conditions, the evident intent and purpose of the parties is to be looked to, and as is the case with insurance companies, that they are generally located at great distance from the insured, it cannot reasonably be supposed that they expected or intended that the assured should, in person or by agent, deliver the proofs of loss, but that he should execute them with due diligence, and with equal diligence send them to the company by mail, which is now the principal medium through which the commercial business of the world is transacted. A contrary rule gives undue force to arbitrary conditions and jeopardizes too seriously the interests of the assured. This view seems correct with reference to notice of loss required to be sent forthwith. With respect to proofs of loss, where time is allowed for delivery, there is not the same necessity and possibly not the same intent of the parties. Considering the widely extended and peculiar business of insurance, the evident general understanding of the parties as to service of notices, as well as the well-known usage when a notice is required to be sent immediately to a company, not in the same town where the insured lives, but located considerable distance therefrom, the sending of it by mail is prima facie evidence of service. It may not be conclusive, as in case of commercial paper, but the reason is quite as strong that it should be prima facie sufficient. The usage and the rule of evidence arise from the intent and purpose of the contracting parties as well as their convenience or necessity. It is not necessary to remark on the doctrine in Kinney v. Altvater, 27 P. F. Smith 34 ; Bank v. McManigle, 19 Id. 156, and like cases, which are within the general rule that there is no presumption of law that a

[Susquehanna Mut. Ins. Co. *v.* Toy Co.]

letter, mailed to one at the place he usually receives his letters, was received by him.

The policy in this case covered property at Tunkhannock, and the company is located at Harrisburg. It is stipulated that notice of loss shall be given forthwith to the secretary of the company; and proofs of loss delivered to said secretary within thirty days after said loss. The assured was required at once to send notice to the secretary at Harrisburg, which he did by mail, if the testimony is believed. There was no attempt to disprove the receipt of the notice. The court charged that there is a presumption that a letter containing a notice of loss by fire, addressed to the secretary of the company at the home office of the company, and duly mailed, is received by the company, and the jury may infer actual notice therefrom. We discover no error in the first, fourth and fifth specifications.

It appears in the argument on behalf of the plaintiff in error that its fourth point was intended to refer to notice, as implied, when the proofs of loss were delivered, but the court very properly answered the point as it was written. That it was rightly answered is apparent by reference to the next point, the fifth, which was affirmed. The sixth specification of error is not sustained.

Section 56, Act of May 1st 1876, Pamph. L. 67, provides: "That the certificate of any mutual fire insurance company, now in existence or hereafter incorporated, signed by the president and attested by the secretary of such company, with the seal affixed, setting forth that an assessment had been made upon the premium note or notes of any member, and the amount due by such member upon such note or notes, shall be prima facie evidence thereof in all the courts of this Commonwealth." The remaining part of the section expressly relates to suits by the company against a member, and provides that upon the defendant filing an affidavit within the prescribed time, setting forth certain facts, such certificate shall cease to be evidence of anything. Prior to its enactment it was often a useless burden upon the company to adduce legal proof of an assessment and of the defendant's liability, in order to recover a sum to which there was no defence. Now, when a mutual company sues a member for an assessment, the certificate establishes the case unless a defence is averred under oath, and then it establishes nothing. The first part of the section refers to other cases, and in them the certificate is prima facie evidence of the amount due. It is not here a question whether the company ought to be relieved of the burden of producing books and witnesses to show the validity of an assessment which has not been paid, when sued upon the policy; it is enough that every member alike shares the benefit of the statute. And in all cases where the assessment is valid, it is a real benefit to all parties in the saving of useless costs. The certificate is not conclusive. When the opposite party has a

[Susquehanna Mut. Ins. Co. *v.* Toy Co.]

defence against the assessment he may show it. For that purpose he may demand that the company's books be produced at the trial, and call the officers as well as other persons to testify.

We are of opinion that it was error to reject the certificate showing the amount of the assessment, and the amount due, upon the premium note given for the policy in suit, and the second assignment of error must be sustained.

After rejection of the certificate the defendant offered to prove the assessment by its books, and that the meeting was called in accordance with the by-laws, that the assessment on the plaintiff's note was for losses which occurred during the existence of the policy and note, and did not include any prior losses. This was overruled for the reason that five directors, less than a majority of the whole number, acted in making the assessment. It is necessary to pass on the correctness of this ruling for the cause is to be tried again, and, although the certificate will be prima facie evidence for the defendant, the plaintiff's case may be put on the invalidity of the assessment, for no other cause than that it was laid by less than a majority of the directors. Section 3 of the by-laws provides that thirteen directors shall manage the affairs of the company, " five of whom shall constitute a quorum, and be fully competent to transact business at any of its meetings, which shall be binding upon the members as if a full board had been in session." This was in force when the plaintiff became a member of the company and gave the premium note payable in such portions and at such times as the directors of said company may require for the purpose of paying losses by fire or lightning and necessary expenses, agreeably to the statutes governing insurance companies, and the by-laws of said company. The plaintiff is a party to the mutual agreement between the members that five directors may act as if a full board were present. This question does not concern strangers to the company, nor persons who were members before the by-law was enacted, nor those who, being members at the time it was adopted, refused to be bound by it. It was on the books of the company as a by-law, the company was acting under it, and the plaintiff is presumed to have known of its existence from the date of its membership. It still claims the policy is valid—that the contract is binding on the part of the company to pay the loss, but not binding on the part of the assured to pay the consideration, though five directors have as full power over entering into contracts of insurance as over assessments. Had the plaintiff promptly refused to abide by such by-law, and, if continued, tendered back his policy and demanded return of the note, it could have raised the question whether less than a majority of the board shall be a quorum to transact business. And a member of the company may raise the question in a proper proceeding. But the plaintiff held its policy and was bound to pay proper assessments

[Susquehanna Mut. Ins. Co. *v.* Toy Co.]

for its proportion of the losses which occurred after its date. It made no objection to the by-law, or to action under it. If the assessment was made in accordance with the by-laws, is not in itself a violation of the statutes, was proper for the purposes for which the premium-note was given, and was just, it will not be held invalid as respects the plaintiff in its suit upon the policy.

The seventh and eighth assignments cannot be considered, for no evidence of the assessments was admitted.

Judgment reversed, and a *venire facias de novo* awarded.