Marian McSparran, Isabella McSparran and William F. McSparran, trading as the Fairfield Packing Company and insured as the Fairfield Canning Company, *v.* The Southern Mutual Insurance Company of Lancaster County, Appellant.

*Evidence—Credibility of witness—Fire insurance.*

In an action upon a policy of fire insurance where the testimony of the plaintiff at the trial as to the value of the goods burned differs materially from the value as stated by himself in the proofs of loss, and he undertakes to explain the discrepancy, it is a question for the jury whether his explanation is true and satisfactory, and the defendant may show, as bearing upon the credibility of the witness, that he had made an intentional misstatement as to double insurance in another proof of loss to the same company on goods alleged to have been lost in the same fire.

*Insurance—Fire insurance—Additional insurance—Notice—Evidence—Rebuttal.*

The prima facie evidence that a letter duly mailed to an insurance company containing notice of additional insurance was received in due course of mail is fully rebutted by the uncontradicted testimony of the person addressed that it did not reach him until a much later date, confirmed by the stamp of the receiving post-office.

*Insurance—Fire insurance—Additional insurance—Indorsement of policy—Waiver—Notice.*

Where a policy of fire insurance provides that any additional insurance shall be indorsed upon the policy, the policy becomes void if additional

insurance be written and no notice thereof given until after a fire has taken place.

*Insurance—Fire insurance—Additional insurance—Plaintiff's notice to secretary.*

Where a by-law indorsed on a fire policy requires notice of additional insurance to be given to the directors, a statement by the secretary that notice might be given to him instead of the directors, and by mail instead of in person, cannot be construed as an agreement that a letter posted should be accepted as notice before it is received.

Argued May 15, 1899. Appeal, No. 381, Jan. T., 1898, by defendant, from judgment of C. P. Lancaster Co., April T., 1897, No. 48, on verdict for plaintiffs. Before GREEN, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before BRU-BAKER, J.

When William F. McSparran, one of the plaintiffs, was on the stand, he was asked this question by defendant's counsel on cross-examination:

" Q. Did you furnish any other proof of loss arising out of this fire, to this company ? "

Objected to by the plaintiffs' counsel.

The Court: We would like to know the purpose of the offer.

Mr. Hensel : To test the credibility of the witness. In order to impeach the credibility of the witness, I offer to prove that, at the same time he furnished this proof of loss, he furnished another proof of loss to this same company, averring that he had no insurance on other property which was insured and upon which he obtained an insurance.

Objected to by the plaintiffs' counsel.

The Court: Objection sustained. Bill of exceptions signed and sealed. [1]

The witness testified in chief:

" Q. Did you notify the defendant company in this case that you had taken out additional insurance upon the personal property covered by the policy issued by them, and, if so, when and how ? "

Objected to by the defendant's counsel.

The Court: Objection overruled. Bill of exceptions signed and sealed.

" A. I notified them by letter." [2]

" Q. You testified this morning, in answer to a question from Mr. Hensel, that you had held policies in this company for a period of thirty years. During that time, did you, from time to time, take out other insurance in other companies covering the same risk, which were covered by the policies issued by this company ? "

Objected to by the defendant's counsel as immaterial and irrelevant.

The Court: Objection overruled. Allowed for the present. Bill of exceptions signed and sealed.

" A. Yes. I took out other insurance." [3]

" Q. During that period, who was the secretary of the company? A. Dr. H. E. Raub. Q. State whatever occurred between you and Dr. Raub, as secretary of the company, as to what notice was required by you to be given of additional insurance, when you took it out upon the same risk covered by the policy issued by the corporation defendant, and how often it occurred, as near as you can tell."

Objected to by the defendant's counsel, unless it was in reference to this property.

The Court: Objection overruled. Bill of exceptions signed and sealed.

" A. I met Dr. Raub on one occasion and told him that I intended to secure additional insurance on our stock of canned goods, as the amount their company allowed me to carry didn't sufficiently protect us. I told him I had asked for $1,000 in the Firemen's of Reading." [4]

" Q. Give us the instance you can remember, and what was your practice of dealing with this company through the secretary? A. I intended to take out additional insurance in the Firemen's of Reading and the Glens Falls of New York. Q. Give us the time. A. I can't recollect the year; and I asked him if it was necessary that I should run to Quarryville to see him, which was nine miles from my home, every time I told him I wished to effect additional insurance and get his permission for me to have it. He said, ' Oh! no; just write me how much you want to get and the name of the company and the amount of the policies and the dates.' Q. How often, in the course of your dealings with him, did you give him such a notice ? "

Objected to by the defendant's counsel.

The Court: Objection overruled. Bill of exceptions signed, sealed and filed for the defendant.

" A. Well, I suppose I gave it to him every year for a number of years. Q. How did you do it? A. By letter. Q. Was the propriety of your conduct in this matter ever questioned by the company? "

Objected to by the defendant's counsel.

The Court: Objection overruled. Bill of exceptions signed and sealed.

" A. I never had any intimation from them that that was objectionable." [5]

" Q. The notice you sent them this time, was it or not precisely in the same form in which you had given them notice before of additional insurance? "

Objected to by the defendant's counsel.

The Court: Objection overruled. Bill of exceptions signed and sealed.

" A. Yes, it was the same form." [6]

Mr. Hensel: I offer to ask the witness on cross-examination, and to prove by his answers, that, in the proof of loss prepared and furnished by him to this company for damage occurring out of this same fire, he represented there was no other insurance on certain machinery; whereas, there was other insurance on that machinery in another company, or two companies, and that he collected insurance from both companies on the machinery. This to affect his credibility.

Objected to by the plaintiffs' counsel.

The Court: Objection sustained. Bill of exceptions signed and sealed. [7]

In defense defendant's counsel offered to prove by W. F. McSparran, called as if under cross-examination, that, at the same time, he had the property insured in this building as the property of McSparran & Company, upon which identical property he had taken out other and extra insurance in other companies, without notice to the Southern Mutual Insurance Company; to be followed by proof that, for such property, he presented proofs of loss to the Southern Mutual Insurance Company, in which he swore that he had no other insurance on the property covered by extra insurance in other companies at the

same time; this for the purpose of testing the credibility of the witness.

Objected to by the plaintiffs' counsel.

The Court: Disallowed. The witness is entitled to see the proofs of loss. Bill of exceptions signed and sealed. [8]

Mr. Hensel: I offer to prove by the witness, W. F. McSparran, one of the plaintiffs, as if upon cross-examination, and by submitting to him the proofs of loss on the building and machinery of McSparran & Company, destroyed in this same fire, that he presented to the Southern Mutual Insurance Company a claim or proof of loss embracing the engine, which he has already testified was not the property of McSparran & Company; to be followed by proof that, at the same time, he had insured this engine and other machinery in two other insurance companies, without notice to, or knowledge of, or consent from, the Southern Mutual Insurance Company.

Objected to by the plaintiffs' counsel.

The Court: Objection sustained. Bill of exceptions signed and sealed. [9]

Verdict and judgment for plaintiffs for $3,345. Defendant appealed.

*Errors assigned* among others were (1–9) rulings on evidence, quoting the bill of exceptions.

*W. U. Hensel,* of *Brown & Hensel,* for appellant.—The credibility of the witness was for the jury: Dosch v. Diem, 176 Pa. 603; Huoncker v. Merkey, 102 Pa. 466.

The ruling by the learned trial judge that notice of extra insurance need only be "sent" to the secretary of the company, and that it bound the company to approve and permit the added insurance, even if the letter never reached the insurer, is novel and startling: Inland Ins. & Deposit Co. v. Stauffer, 33 Pa. 405; Mitchell v. Lycoming Mut. Ins. Co., 51 Pa. 410; 2 Biddle on Insurance, 887; Hamilton v. Royal Arcanum, 43 W. N. C. 415; Hale v. Mechanics' Mut. Fire Ins. Co., 6 Gray (Mass.), 169; Carpenter v. Providence Washington Insurance Co., 16 Peters, 495; Golden v. Northern Assur. Co. of London, 49 N. W. Rep. 246; Clement's Digest, p. 214; Richards on Insurance, 147–158; Corcoran v. Life Ins. Co., 183 Pa. 449; Beatty v.

Lycoming Co. Mut. Ins. Co., 66 Pa. 9; Bard v. Penn. Mut. Fire Ins. Co., 153 Pa. 257; Gould v. Ins. Co., 134 Pa. 570; Ayers v. Hartford Fire Ins. Co., 17 Iowa, 176; Hench v. Ins. Co., 122 Pa. 128; Brown v. Com. Mut. Ins. Co., 41 Pa. 187; Penna. Ins. Co. v. Gottsman, 48 Pa. 151; Seybert v. Penna. Mut. Fire Ins. Co., 103 Pa. 282; Penna. Mutual Fire Ins. Co. v. Schmidt, 119 Pa. 449; Renninger v. Dwelling House Ins. Co., 168 Pa. 350; Wagner v. Dwelling House Ins. Co., 143 Pa. 338; Everett v. London, etc., Ins. Co., 142 Pa. 332; Tritschler v. Keystone Mut. Benefit Assn., 180 Pa. 205; Briggs v. Hervey, 130 Mass. 188; Whitmore v. Dwelling House Ins. Co., 148 Pa. 405; London Assurance Corporation v. Russell, 1 Pa. Superior Ct. 320; Farmers' Nat. Bank v. Marshall, 44 W. N. C. 68.

Waiver is a matter of intention, and cannot take place unless the insurer knows of the breach of the contract. This knowledge must be shown by the party alleging the waiver: Diehl v. Adams Co. Mut. Ins. Co., 58 Pa. 443; Flynn v. Ins. Co., 4 Pa. Superior Ct. 137; Freedman v. Fire Assn., 168 Pa. 249; Riley v. Penna. Mut. Life Ins. Co., 189 Pa. 307; Forbes v. Agawam Mut. Fire Insurance Co., 9 Cushing (Mass.), 470; Zimmerman v. Home Ins. Co., 77 Iowa, 685; Pendar v. American Mut. Ins. Co., 12 Cush. (Mass.) 469; Worcester Bank v. Hartford Fire Ins. Co., 11 Cush. 265; Kimball v. Howard Fire Ins. Co., 8 Gray, 33; Com. Mut. Fire Ins. Co. v. Huntzinger, 98 Pa. 48; Cleaver v. Traders' Ins. Co., 65 Mich. 527; Zimmerman v. Home Ins. Co., 77 Iowa, 685; 2 Biddle on Ins. 884; Allemania Fire Ins. Co. v. Hurd, 37 Mich. 11; Day v. Mechanics & Traders Ins. Co., 4 West. Rep. 614; New Orleans Ins. Assn. v. Griffin, 66 Tex. 232; Batchelder v. Queen Ins. Co., 12 Ins. L. J. 813; Havens v. Home Ins. Co., 111 Ind. 90.

*B. F. Davis*, with him *George Nauman*, for appellees.—The purpose of the cross-examination was alleged to be to assail the credibility of W. F. McSparran, a witness. It was, however, an attempt to interject the defense on cross-examination. It concerned matters not to be determined in this suit, and, above all, the question or offer assumed as a fact what was not a fact, and was objected to on that ground, and because it was not cross-examination. Even the offer might have been admitted if the defense had shown him the proofs of loss: Boyd v. Conshohocken Worsted Mills, 149 Pa. 363.

Under the by-laws the company had not reserved a right to declare the policy void on receiving notice of additional insurance: Westlake v. St. Lawrence County Mut. Ins. Co., 14 Barbour, 206.

As a rule, the law does not require vain things, and technical proofs could but restate that of which the company was already informed: Roe v. Dwelling House Ins. Co., 149 Pa. 94; Consolidated Manf. Co. v. West Chester Fire Ins. Co., 13 Pa. C. C. R. 321; Schmidt v. Ramsay, 6 Pa. Dist. Rep. 584.

The policies were in writing. Their construction was for the court, not the jury: Mitchell v. Lycoming Ins. Co., 51 Pa. 402; Helme v. Phila. Life Ins. Co., 61 Pa. 107.

The policy upon which the subsequent insurance was granted was not produced, and whether it is on the same goods or a double insurance was not shown to the court. The best evidence of that would have been the policy itself: Sloat v. Ins. Co., 49 Pa. 14; Clarke v. Assurance Co., 146 Pa. 561; Inland Ins. & Deposit Co. v. Stauffer, 33 Pa. 397; Stauffer v. Ins. Assn., 164 Pa. 199.

Notice to the secretary is sufficient: Crawford County Mut. Ins. Co. v. Cochran, 88 Pa. 230; Farmers' Mut. Fire Ins. Co. v. Ensminger, 12 W. N. C. 9.

Opinion by Mr. Justice Mitchell, October 6, 1899:

The evidence going to the credibility of McSparran should have been admitted. He was the main witness for the plaintiffs, and it was conceded that his testimony as to the value of the goods burned differed materially from the value as stated by himself in the proofs of loss. He had offered an explanation, the truth and satisfactoriness of which was for the jury to pass upon. Defendant offered to show that he had made an intentional misstatement as to double insurance, in another proof of loss to the same company on goods claimed to have been lost in the same fire. For the purpose of testing the truthfulness of his present testimony the other was sufficiently a part of the same transaction. It was error to exclude it. The judge accompanied the exclusion with the remark, " The witness is entitled to see the proofs of loss," but it nowhere appears that the witness had asked to see them, or in any way denied their execution. Nor is the argument of appellees that it was an

effort to interject the defense into the cross-examination tenable. The offer was not part of a new defense, nor offered as such, but expressly as going to the credibility of the witness and therefore to the plaintiffs' proof of their own case : Huoncker v. Merkey, 102 Pa. 462.

It was also an error for the judge to assume that the explanation was true. That was for the jury, and it was a vital point in the case, for if the value as stated in the proofs of loss was the correct one, then the goods were confessedly overinsured, and plaintiffs could not recover at all.

The policy in suit contained a provision that, " Notice of all other insurance upon the property herein described, whether made prior or subsequent to the date hereof, must be indorsed on this policy, otherwise this insurance shall be void." And one of the by-laws, also printed on the policy, provided that " Any person having property insured in this company, may partly insure the same property in another company, provided the whole of the insurance does not exceed three-fourths of the cash value of the property so insured, and such person will be required to give notice to the directors of this company of the amount so insured, and where insured, otherwise the insurance will be void in case of loss." The plaintiffs received policies for additional insurance on August 12, and gave evidence that notice was mailed to the secretary of the company the same evening or the next day. The judge charged the jury as matter of law that this was sufficient compliance with the policy and the by-law. In so doing he went far beyond the rule to be found in any of our cases.

Notice is knowledge or information legally equivalent to knowledge, brought home to the party notified in immediate connection with the subject to which the notice relates. It is not therefore the sending but the receipt of a letter that will constitute notice, and there is no presumption of law that a letter mailed has been received. Our earlier cases were inclined to exceptional strictness on this point. In Tanner v. Hughes & Kincaid, 53 Pa. 289, it was held that the only cases in which there is a legal presumption of receipt are those concerned with notice of dishonor of bills or nonpayment of notes, and that this laxity grew up by commercial usage, and even by that is confined to cases where the parties do not live in the same place.

This was repeated in First Nat. Bank of Bellefonte v. McManigle, 69 Pa. 156, and Kenney v. Altvater, 77 Pa. 34, in which it was said, " Letters properly directed and duly mailed are sufficient evidence of notice of the dishonor of bills, or nonpayment of negotiable notes. This rule is restricted to commercial paper. It establishes no such legal conclusion in other business relations." In Susquehanna Mut. Ins. Co. v. Toy Co., 97 Pa. 424, a distinction was laid down more specifically that while there is no legal presumption of receipt, yet where by the contract (in that case a policy of insurance) notice was to be given by one party to another in a distant place, the custom and usage of business justify the use of the mail, and proof of a letter properly addressed and mailed is prima facie evidence for the jury of its receipt by the person addressed. This was followed in Whitmore v. Ins. Co., 148 Pa. 405, where the rule was thus stated by the present Chief Justice : " The fact of depositing in the post-office a properly addressed, prepaid letter, raises a natural presumption, founded in common experience, that it reached its destination by due course of mail. In other words, it is prima facie evidence that it was received by the person to whom it was addressed ; but that prima facie proof may be rebutted by evidence showing that it was not received. The question is necessarily one of fact, solely for the determination of the jury under all the evidence." This was followed in Jensen v. McCorkell, 154 Pa. 323, and London Assurance Co. v. Russell, 1 Pa. Superior Ct. 320, and is now the settled rule in this state, as it is generally in others : 16 Am. & Eng. Ency. of Law, 825, title " Notice."

In the present case the prima facie evidence of receipt of the letter by due course of mail was fully rebutted by the uncontradicted testimony of the person addressed that it did not reach him until August 27, confirmed by the stamp of the receiving post-office on the same date. In the mean time the fire had occurred on August 21.

The policy requires that the additional insurance shall be indorsed on it, or the insurance shall be void. It is not necessary to go the full length of appellant's argument that the indorsement is indispensable to the plaintiffs' recovery. It may be waived by delay of the company to act on the notice, as in Kalmutz v. Ins. Co., 186 Pa. 571, or in other ways. But the object of the clause is to give the company an opportunity

to examine into a new factor which may alter its position in the contract, and to regulate its action accordingly. This opportunity it cannot have until the notice is received. In the present case the additional insurance brought the total amount up to within a few dollars of the three-fourths value which would constitute overinsurance, by plaintiffs' own testimony, and if the value was as stated in the proofs of loss, then the limit was passed and the insurance void for that reason. The case in that respect is a notable illustration of the purpose and necessity of such a clause. The company was entitled to notice of such a material change in the relation of the amount insured to the value of the property, and an opportunity to accept and approve the contract in its new condition, or to terminate and cancel the insurance in the method provided in the policy. This opportunity was not given it until after the fire had taken place. It was then too late. By the explicit terms of the policy the insurance was void until the additions were indorsed on the policy, and the company was in no default and did no act which could be treated as a waiver. The risk of the delay therefore was by the terms of the contract on the insured.

The evidence of conversations between one of plaintiffs and the secretary of the company in regard to sending notice by mail, does not affect the result. Even if the secretary had power to alter a condition of the policy, which nowhere appears, the evidence does not show that he did so. The conversations testified to were very vague as to time and circumstances, and the latest of them was admittedly several years before the contract in question. The by-law indorsed on the policy requires notice to be given to the directors, and the utmost that the secretary's conversation can in any view amount to is that notice might be given to him instead of the directors, and by mail instead of in person by plaintiffs, as the witness expressed it, "running to Quarryville to see him, which was nine miles from my home." By no stretch of construction can this be treated as an agreement that a letter posted should be accepted as notice before it was received. This default of timely notice being fatal to plaintiffs' recovery, defendant's seventh point should have been affirmed and the verdict directed in its favor.

Judgment reversed.