# Teitelbaum v. Board of Revision of Taxes

*I. Ostroff*, for complainant.

*F. F. Truscott* and *J. H. Lieberman*, for board of revision of taxes.

GORDON, JR., P. J., November 12, 1947.—This is a bill in equity brought by the owner of 3134-38 W. Columbia Avenue, Philadelphia, against the board of revision of taxes and various tax officials of the city to restrain collection of that proportion of the tax levied against his property for 1947 which is allocatable to an allegedly unlawful increase in its assessment for that year.

The bill alleges that in the year 1946 the assessment of the property for 1947 was raised from $27,700 to $44,400, and that plaintiff "did not receive any notice of the assessment upon which the valuation and the taxes were increased" as required to be given by section 10 of the Act of June 27, 1939, P. L. 1199. In addition to the prayer for general relief the bill concludes with prayers for: (a) An injunction restraining the collection of the tax upon the increased portion of the assessment, (b) an order upon the city controller and receiver of taxes to mark their records to show a "change of figures back to the original assessment", and (c) an order upon the board of revision of taxes to "properly serve notice of an increase of assessment upon" plaintiff, and that he "be granted the right of appeal against such increase nunc pro tunc".

Without challenging plaintiff's assertion in the bill that he did not actually receive notice of the increase, the answer avers that due and proper notice thereof was mailed to him at least 10 days before October 1, 1946, as required by section 10 of the statute, the pertinent portion of which provides that, "every such notice shall be given either by mailing or delivering the same to the address of the owner *as shown upon the records of the Board* or by posting upon the assessed property". (Italics supplied.)

Plaintiff testified at the trial that he neither received any formal notice of the increase, nor did he learn of it in any other way, until he received his tax bill for 1947, long after the time fixed by the act for an appeal from the assessment had expired. What appears to have happened is this: Until 1943, plaintiff received his tax bills for the property in question at his then residence, 5322 Master Street, which was also his registered address as owner thereof. In that year he moved to 6483 Morris Park Road, and upon failing to receive his tax bill, he went to the office of the receiver of taxes, told the clerk who waited on him that he had moved, and requested that his registered address be changed to his new residence. The clerk said he would do so, but also advised plaintiff to send a formal written request for the change to the receiver and to the board of revision of taxes. Plaintiff testified that he thereupon mailed letters making the request to both the receiver and the board, and that thereafter his tax bills were regularly received at his new address. However, although the receiver's office thus appears to have made the correction requested, the board of revision did not change his registered address upon its records.

The assessment was increased in 1946 for 1947, and the board mailed timely notice of the increase to plaintiff's prior address, 5322 Master Street, which was the address still appearing upon its records. That notice was returned with a post office notation that plaintiff was "not at" said address. Another notice was then mailed by the board "to the Owner of Premises 3134-3138 West Columbia Avenue", which was not returned by the Post Office Department. This latter notice was, of course, ineffective for any purpose whatever, since it did not comply with the requirements of the act, which authorizes notice to be given in only one or the other of two ways, namely: (1) By

mail or delivery to the registered address of the owner, or (2) by posting on the affected property.

The executive clerk of the board testified that no request from plaintiff to change his address on its records had been received by the board, either by mail or otherwise, and that, whenever such requests are received, he, the executive clerk, causes the change to be made on the records of the board, and also customarily notifies the receiver, so that the latter can correct his records accordingly. This would be the obviously logical and regular method of procedure, since the law requires the board to furnish the receiver with a duplicate copy of its books at the beginning of the tax year, and places no duty upon the receiver to communicate to the board changes in the addresses of owners thereafter coming to his attention. The receiver's records are not the basis of any part of the exercise of the taxing power; he is a mere collector of the tax, and his records are furnished to him by the board after the assessments are completed, and only to enable him to send out bills for the current year's taxes. His records in no way figure in the board's preceding work of assessment, in which the law expressly makes its own records the basis of its official actions. On the other hand, it appears to be a practice of the receiver's office, although not required by law to do so, to notify the board of any changes in the addresses of owners of which it learns. Being not compulsory, the practice is merely an act of courtesy and convenience, obviously intended to promote, for the mutual benefit of the city and property owner, the efficient assessment and collection of the public taxes. In the present case, however, it was not followed for some undisclosed reason. That fact, however, cannot affect the rights of the parties here, since whatever he or his employes may, voluntarily and as an accommodation to a taxpayer, undertake to do in the way of notifying the board,

they do as agents of the taxpayer, and not of the city. Hence their neglect to follow the practice cannot be attributed to the city so as to defeat its right to assess and collect the proper taxes due it. But even if the receiver or his employes could be considered as acting as agents for the city in communicating changes in owners' addresses to the board of revision of taxes, their negligence in that connection would not operate to invalidate the increase in the tax against which plaintiff complains. Such negligence would be that of an agent or employe of the city engaged in the exercise of the taxing power, a purely governmental function delegated to it by the Commonwealth: Rieck-McJunkin Dairy Company Mercantile Assessment Case, 156 Pa. Superior Ct. 9; and when a municipality acts in a sovereign, or quasi-sovereign, capacity, it cannot be held liable for the negligence of its agents: Kraeling v. Dormont Borough, 352 Pa. 644. And by the same token such negligence could not be invoked, upon any theory of laches or estoppel, as a defense against the sovereign: Schuylkill County v. Commonwealth, 36 Pa. 524; City of Philadelphia v. National Surety Corp., 48 F. Supp. 381, 1942, affd. 140 F.(2d) 805. We see no merit, therefore, in plaintiff's contention that the notice of the change of residence which he gave to the receiver was sufficient, either in itself, or in conjunction with the omission of the receiver's office to notify the board of revision thereof, to justify our restraining the collection of the increased taxes here in question.

There is no merit in plaintiff's further contention that the board of revision was negligent because, when the first notice of change in the assessment was returned to it, it might have consulted the corrected records of the receiver and sent its second notice to the new address appearing on them. If, as the board claims, it received no notice of plaintiff's change of

residence, it neither had reason to know that the receiver's records had been changed, nor was it required to go beyond its own official records in sending out notices. To hold that the board must conduct an investigation in order to locate owners of real estate whenever, after changing their residences, they neglect to take proper steps to have their registered addresses changed, would put upon it a burden of investigation and research unauthorized by law, and which would create intolerable confusion and uncertainty in the assessment and collection of the taxes essential to the efficient operation of government.

The notice of his new residence given by plaintiff to the receiver of taxes being clearly ineffective to invalidate the increased assessment upon his property for 1947, we now come to the principal question in the case, namely, whether plaintiff is relieved from liability for the increased tax because the board of revision of taxes, which is the body required by law to keep the registry of owners and to send notices of increases in assessment to their registered addresses, neglected to change plaintiff's address on its records in response to the notice of his change of residence which he claims he mailed to it in 1943, and consequently mailed the notice of the increased assessment for 1947 to his former address. The board sent its first notice of the increased assessment precisely as required by the Act of 1939, that is, by mailing it to the registered address of plaintiff appearing on its records. That notice was in every respect regular, valid and effective to support the tax based upon the increase, in the absence of a successful appeal therefrom in the manner provided by law. To avoid this consequence, plaintiff contends that when, in 1943, he mailed to the board his request for a change in his registered address, which was not returned to him by the postal department, he had done all that he was

required to do to effect the appropriate change in its records, that he had the right to presume the request had been received by the board and the change made, and that the board's failure in these circumstances to make the change, coupled with its subsequent sending of its notice of the increase in the assessment to his former residence, wrongfully deprived him of the right to appeal from the increase, amounted in law to no notice at all, and rendered the increase and the tax upon it unlawful and void.

With this contention we cannot agree. When a deed transferring title to real estate is presented for recording, the law requires it to show the address of the grantee, and directs the recorder to forward the name and address of the new owner to the Bureau of Surveys: Act of April 22, 1929, P. L. 620, sec. 1, 16 PS §3351. That bureau in turn conveys the same information to the board of revision of taxes for entry upon its records. The name and address of the new legal owner thus becomes officially registered for purposes of taxation and the service of notices and other process required by law to be served upon the registered owners of real estate. The registration thus established continues until the property is transferred to a new owner, whose name and address become registered in the same manner, or, in the case of change of residence only, until the owner requests a change in his registered address by giving due and effective notice thereof to the survey bureau or to the board of revision, the official custodian of the registry of owners. The duty to procure a change in an established registered address rests exclusively upon the owner who alone knows of his removal to a new address, and who desires it registered for his own benefit and protection. It would be impossible for the board, on its own initiative, to keep itself informed respecting the innumerable changes of residences that are constantly occurring among the

thousands of registered owners of real estate and to correct its records accordingly, nor is it authorized or required by law to do so. Taxes are levied by the operation of State or local laws of which all citizens must take notice, and in obedience to them it is the duty of the owner of taxable property to make disclosure of it and have it duly assessed, that is to say, to make return of it, and to pay the tax, when it becomes due, to the proper collecting authority. The operations of government would be paralyzed if the citizen were permitted to remain silent and defer payment of his taxes until he and the nature and extent of his taxable property are ferreted out by an endless and highly uncertain process of investigation and discovery.

This basic principle of the duty of the citizen to see to the payment of his taxes himself without waiting for demand for them from his government is the justification for those laws which expressly require written returns and preliminary self-assessment by the owners of taxable personal property, income and the like, and is fundamentally applicable to all tax legislation. Once the plaintiff's name and address as owner of the property was registered, it became his duty, if he wished the registration changed, to see to it that the change was made either by personally notifying the board of revision of taxes, or at least by employing an effective method of delivery. Any failure in the agency selected by him to complete the delivery would be that of his own agent for which he alone would be responsible. Hence, it was not sufficient for him merely to mail his notice to the board and take for granted that it was delivered, for the mailing was not in itself a delivery. He could readily have protected himself by an examination of the board's records, which are open to public inspection; and the receipt of his tax bills at his new address, after his

direct request to the receiver of taxes to send them there, gave him no right to assume that the notice he sent to the board of revision had been received by it.

In order to avoid liability for the taxes in question, therefore, it was necessary for plaintiff to prove that the notice was actually received by the board, and in this he has completely failed. He offered no evidence upon this subject except his own testimony that he mailed the notice, relying entirely upon the so-called. presumption that it was delivered to the board in due course by the postal department. No such general presumption is known to the law. In McSparran et al. v. The Southern Mutual Ins. Co., 193 Pa. 184, on page 191, Mr. Justice Mitchell, after pointing out that "Notice is knowledge . . . brought home to the party notified", said that: "It is not therefore the sending but the receipt of a letter that will constitute notice, and there is no presumption of law that a letter mailed has been received." The legal presumption of the receipt of a notice arising from its mailing is confined to special classes of cases, arising out of commercial usage and business, such as notice of the dishonor of bills and notes,[1] or, of course, where a particular method of giving a notice is prescribed by contract, or by law; e. g., the first notice from the board of the increased assessment in this case given to plaintiff by mail, as provided by the Act of 1939, supra. There is, however, a prima facie, evidential presumption of the receipt of a notice or letter, which arises from its mailing, and which is thus clearly stated by Mr. Justice Sterrett in Whitmore v. Dwelling House Insurance Co., 148 Pa. 405 (p. 417):

---

[1] Tanner v. Hughes & Kincaid, 53 Pa. 289; First National Bank of Bellefonte v. McManigle, 69 Pa. 156; Kenney v. Altvater, 77 Pa. 34; Susquehanna Mutual Fire Ins. Co. v. Tunkhannock Toy Co., Ltd., 97 Pa. 424.

"It is well settled that the fact of depositing, in the post office, a properly addressed, prepaid letter, raises a natural presumption, founded in common experience, that it reached its destination by due course of mail. In other words, it is prima facie evidence that it was received by the person to whom it was addressed; but that prima facie proof may be rebutted by evidence showing that it was not received." [2]

Unsupported by evidence of other corroborative circumstances, however, this prima facie presumption is of the weakest character, for it has been held to be fully destroyed by the uncontradicted denial of the receipt of a mailed notice by the addressee: Beeman v. Supreme Lodge, Shield of Honor, 215 Pa. 627; Edelson v. American Employers' Insurance Co., 9 D. & C. 514; and this rule has been consistently applied in other jurisdictions as well as our own. Thus, it was held in McCourry v. Domerus, 10 N. J. L. 245, that an attorney's affidavit that he did not receive a notice which was mailed to him was held to have entirely destroyed the presumption of receipt; and in Leahy v. United States, 10 F. (2d) 617, testimony that a notice to the Veterans' Bureau was never received was held to overcome the presumption; so also in Hobson v. Queen Insurance Co., 2 Ohio N. P. 296, after observing that mail does at times miscarry, the court held that testimony of an insured that he never received a certain notice that was mailed to him was regarded as overcoming the presumption of its receipt; and in State ex rel. Guaranty Bank & Trust Co. v. Downs, 10 La. App. 234, where a tax collector's denial that he received a check claimed to have been mailed was held sufficient to work a like result.[3]

---

[2] See also Jensen v. McCorkell, 154 Pa. 323; London Assurance Co. v. Russell, 1 Pa. Superior Ct. 320.

[3] See also Hill v. Wiles, 113 Me. 60; Planters' Mut. Ins. Co. v. Green, 72 Ark. 305; Sloan v. Grollman, 113 Md. 192; First Nat. Bank v. Way, 167 Iowa 426; Benge v. Eversole, 156 Ky. 131; Benefit Assn. v. Hancock, 248 Ky. 315; Fleming v. Anderson, 232 S. W. 718; Cheesman v. Cheesman, 203 App. Div. (N. Y.) 533.

Applying the foregoing principles to the case before us, it is apparent that plaintiff has utterly failed to meet the burden resting upon him of proving that the board of revision received and negligently or wrongfully ignored the notice of change of residence he claims to have mailed to it. The uncontradicted and credible denial by the executive secretary of the board, whose duty it was to attend to such communications, of having received the notice, fully rebutted the prima facie presumption of its receipt, upon which alone plaintiff rested his case. This leaves him without any proof whatever upon that issue, and requires a finding that he never notified the board of his change of residence and a dismissal of the bill. For this result plaintiff has no just reason to complain, for he could have readily protected himself by giving the notice to the board personally, or by having it delivered in a manner that would have furnished positive proof of its receipt. Having sent it by ordinary mail, however, instead of taking the obvious precaution of confirming its receipt by inquiry at the office of the board, or by an inspection of the registry, he chose to rely upon the fallacious and manifestly unwarranted assumption that, because the receiver of taxes had received the notice mailed to him, the board had also received the one mailed to it. On the basis of such indifferent attention to his own interest, plaintiff has little reason to claim that the unfortunate predicament in which he finds himself was caused by the carelessness of others, or to ask equity to rescue him from its consequences by ignoring settled precedents and the established rules of evidence.

There is no merit in plaintiff's third request for the conclusion of law that by sending its second notice of

the increased assessment addressed to the "Owner of Premises 3134-6-8 West Columbia Avenue", the property assessed, the board relinquished "any rights which could arise because of the mailing of the first notice in compliance with the statute". Although the second notice was a nullity because it did not comply with the statute, the sending of it neither harmed plaintiff's position, nor invalidated the first notice; and if the first was valid and effective, as we have held and as plaintiff apparently concedes in the request, the second amounted to no more than an unsuccessful, voluntary attempt to advise him of the increase, which cannot be considered as a "relinquishment" of the rights acquired by the city under the previous valid service, which the board had no authority to waive or in any way diminish.

Neither is there any merit in plaintiff's tenth request for the conclusion of law that "the notice upon which the board seeks to rely to hold this assessment would be a violation of the due process cause of the (Federal) Constitution". If by this it is contended that the method of service of notices of increased assessments prescribed by the legislature in the Act of 1939 is unconstitutional, the answer to it is plain. It has never been held that actual personal notice must in all cases be brought home to a person entitled to notice in order to comply with the requirements of due process. Indeed, the legal necessity for that kind of service is rare. Legal notices of all kinds are validly served in a variety of ways authorized by statute which do not require actual delivery of them to the person to whom they are addressed. Suits are instituted by leaving the bill, summons, or complaint with an adult person at the home or place of business of defendant, or even in the case of subpœnas in divorce by advertisement in certain circumstances. Instances of valid services other than personal could be multi-

plied indefinitely, but those we have suggested are sufficient to expose the fallacy of this contention. All that is required is that the method of service provided for by the legislature shall afford a reasonable and fair probability that the notice will, in the ordinary course of events, reach the person for whom it is intended; and a notice such as the present sent to the address which the owner of the property affected is required to, and has, registered with the taxing authorities, is clearly within the constitutional requirement of due process.

With reference to the prayer of the bill that plaintiff be granted the right to appeal from the assessment nunc pro tunc, it will be sufficient to observe that, where a statute limits the time within which an appeal must be taken, the courts are without power to extend it: Higgings v. The Educators, 147 Pa. Superior Ct. 400.

For the foregoing reasons we now make the following

*Findings of fact*

1. Plaintiff is, and has been since prior to February 1, 1943, the owner of premises, 3134-38 W. Columbia Ave. in the City of Philadelphia.

2. Said premises are duly registered in the name of plaintiff as owner, the registered address of the owner being 5322 Master Street, Philadelphia.

3. On February 1, 1943, plaintiff removed his residence from 5322 Master Street to 6483 Morris Park Road, Philadelphia, where he has since resided.

4. After moving to his new residence and in the same year, 1943, plaintiff notified the receiver of taxes of said removal, and requested the receiver in effect to note the change on his records so that future tax bills might be sent to his new address. This the receiver apparently did, for plaintiff thereafter regularly re-

ceived his tax bills at his said new address, 6483 Morris Park Road.

5. At the same time plaintiff sent by ordinary mail to the board of revision of taxes a similar notice, of his change of residence which the said board of revision of taxes did not receive, and accordingly did not change plaintiff's registered address on its records.

6. In the year 1946 the board of revision of taxes increased the assessment of plaintiff's property at 3134-38 W. Columbia Avenue from $27,700 to $44,400 and gave due and timely notice to plaintiff of said increase by mailing the same to the address of plaintiff, 5322 Master Street, appearing upon its records, as required by section 10 of the Act of June 27, 1939, P. L. 1199. This notice did not reach plaintiff, for it was returned to the board of revision of taxes by the postal department marked "not at".

7. The board of revision of taxes then sent another similar notice addressed to "The owner of premises 3134-6-8 Columbia Avenue", which said second notice was not returned to the board by the postal department.

8. Plaintiff did not learn of the increase of the assessment on his property until the time allowed by the Act of 1939 for an appeal therefrom had expired.

9. The board of revision of taxes at no time received notice from plaintiff, or otherwise learned of the change in his residence from 5322 Master Street to 6483 Morris Park Road.

From the foregoing findings we also reach the following

### Conclusions of law

1. The notice of the increase in the assessment of plaintiff's property mailed by the board to the registered address of plaintiff at least 10 days prior to October 1, 1946, was in every respect valid and effective to support said increase, unless appealed from by

plaintiff within 10 days after October 1, 1946, as provided by said section.

2. Plaintiff is not entitled to the relief which he seeks and the bill should be dismissed.

3. Plaintiff should pay the costs of this proceeding.

We also make answer to plaintiff's requests for findings of fact and conclusions of law as follows:

### Requests for findings of fact

To plaintiff's requests 1, 2, 3, 4, 5, 6 and 7 we make answer: Refused as immaterial or as adequately covered by our own findings.

### Requests for conclusions of law

To requests 2 and 11, we make answer: Refused as being requests for findings of fact which are either immaterial or are adequately covered by the charge.

To requests numbers 1 and 6 we make answer: Refused as they are mere quotations from the relevant acts of assembly.

To request number 5 we make answer: Affirmed.

To request number 4 we make answer: This is a mere statement of a general legal proposition which has no applicability to this case, and is therefore refused.

If request number 9 is intended to refer to the first notice sent by the board to the registered address of plaintiff, we make answer: Refused.

To requests numbers 3, 4, 7, 8, 10, 12 and 13, we make answer: Refused.

Accordingly, we now enter the following decree nisi in the case:

### Decree nisi

And now, to wit, November 12, 1947, this case having come on to be heard upon bill, answer and proofs, upon consideration thereof, it is ordered, adjudged and decreed

1. That the bill be dismissed.

2. That plaintiff pay the costs of this proceeding.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their counsel, and, unless exceptions thereto are filed within 10 days, either party may present a form of final decree to be entered in the case.